BEATTY, Retired Justice.
Uniroyal Tire Company, Inc. (“Uniroyal”), appeals from a circuit court order determining a tax liability against it. We affirm.
The State Department of Revenue (“Department”) assessed corporate income tax against Uniroyal for the tax year 1990, following Uniroyal’s sale of a partnership interest. The assessment came about from the following facts.
In 1986, Uniroyal entered into a partnership with the B.F. Goodrich Company, wherein both corporations transferred their assets to the partnership and each received a 50% partnership interest. Thereafter, Uniroyal’s only asset was its partnership interest, and between 1986 and 1989 Uniroyal treated income received from the partnership as business income. Then, in 1988, the partnership was recapitalized, resulting in Uniroyal’s percentage of ownership in the partnership being reduced and in Uniroyal’s receiving $80 million in cash.
Later, in 1990, Uniroyal sold its entire partnership interest for approximately $260,600,000 and realized a capital gain of approximately $99.7 million. On its 1990 Alabama tax return, Uniroyal treated the $99.7 million as nonbusiness income. The Department contested the return, maintaining that the $99.7 million was business income, and assessed corporate income tax accordingly. Uniroyal appealed to the Department’s Administrative Law Division, which identified the issue before it as being governed by § 40-27-1 (“Multistate Tax Compact”), Art. IV, l.(a), Ala.Code 1975:
“ ‘Business income’ means income arising from transactions and activity in the regular course of the taxpayer’s trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer’s regular trade or business operations.”
(Emphasis added.)
During the administrative hearing, an executive of Uniroyal testified that the main reason for the recapitalization of 1988 was to obtain cash: “[Uniroyal’s] drive was for cash out of the partnership ... and [recapitalization] was a way ... to achieve that.”
The Department relied upon the wording of § 40-27-1 and its own Regulation 810-3-31-.02(l)(a)4(ii):
“Gains or losses from sales of assets. As a general rule, gain or loss from the sale, exchange or other disposition of real or tangible or intangible personal property constitutes business income if the property while owned by the taxpayer was used to produce business income. However, the gain or loss will constitute nonbusiness income if such property was subsequently utilized principally for the production of nonbusiness income or otherwise was removed from the property factor.”
Upon the conclusion of the administrative hearing, the administrative law judge held that the assessment should be dismissed because, the administrative law judge found, Uniroyal’s gain from the sale of its partnership interest constituted “nonbusiness income.” The administrative law judge, observing uncompromisingly, stated:
“Although corporations sometimes liquidate, they are not in business for that purpose, and liquidation cannot be said to be a normal activity of any business.”
Commenting upon the application of the Department’s regulation, the administrative law judge added:
“However, while a Department regulation interpreting a statute should be given weight, it must be rejected if it conflicts with the language of the statute.”
The Department appealed that order to the circuit court. Both parties filed summary-judgment motions, with briefs. Af *223 ter a hearing, the circuit court issued an order denying Uniroyal’s summary-judgment motion and granting the Department’s summary-judgment motion, reversing the ruling of the administrative law judge, upholding the Department’s assessment against Uniroyal as valid, and increasing the assessment to reflect applicable penalties and interest, pursuant to § 40-2A-7(b)(5)d.l., Ala.Code 1975. Uniroyal appealed.
The circuit court rejected the administrative law judge’s ruling as it pertained to the wording of the statute, observing:
“Here, Uniroyal admitted that its partnership interest produced ‘business’ income while it was owned by Uniroyal. Contrary to the implication of the [administrative law judge], this regulation does not conflict with the statutory definition of ‘business’ income and is not inconsistent with that definition. Instead, the regulation is reasonable.”
A regulation “is to be enforced as if it were a duly enacted statute so long as the regulation is not unreasonable or inconsistent with the statute from whence it was born.” Adair v. Alabama Real Estate Comm’n, 53 Ala.App. 621, 624, 303 So.2d 119, 122 (Ala.Civ.App.1974) (citing Frasier v. Finch, 313 F.Supp. 160 (N.D.Ala.1970)).
“‘It was held in West v. State, 242 Ala. 369, 6 So.2d 436 [1942], that when the act of the legislature expressly declares that the rules and regulations therein referred to shall have the force and effect of law, its status is as a public statute in this respect.
[[Image here]]
“ ‘... [T]he generally accepted theory is that rules, regulations and general orders of administrative authorities pursuant to the powers delegated to them have the force and effect of laws, when they are of state-wide or national application, and so set up as that information of their nature and effect is readily available, or has become a part of common knowledge.’
“State v. Friedkin, 244 Ala. 494, 497, 14 So.2d 363, 365 (1943).”
Ex parte Vizzina, 533 So.2d 658, 660 (Ala.1988) (some emphasis added).
We agree with the analysis of the North Carolina Supreme Court in Polaroid Corp. v. Offerman, 349 N.C. 290, 507 S.E.2d 284 (1998), and we find no conflict between the regulation and the statute.
In Polaroid, the North Carolina court, interpreting a statute virtually identical to our § 40-27-1, Ala.Code 1975, determined that the definition of “business income” contained two separate and independent tests: (1) a “transactional” test or class of income and (2) a “functional” test or class. In distinguishing between the two, that court stated:
“Under the functional test, income is classified as business income if it arises from the acquisition, management, and/or disposition of an asset that was used by the taxpayer in the regular course of business. See [Texaco-Cities Serv. Pipeline Co. v. McGaw], 182 Ill.2d [262] at 268, 230 Ill.Dec. 991, 695 N.E.2d [481] at 484 [(1998) ]. When determining whether a source of income constitutes business income under the functional test, the extraordinary nature or infrequency of the event is irrelevant. Id.”
349 N.C. at 296, 507 S.E.2d at 289.
At issue in Polaroid was whether damages received by Polaroid Corporation in a patent infringement case against the Eastman Kodak Company were “business income” under North Carolina’s statute. After an extensive analysis and reference to decisions in other jurisdictions dealing with the question, the court stated:
“It is undisputed that Polaroid’s patents are an ‘integral part of its regular trade or business operations.’ Indeed, in its brief, Polaroid notes that Kodak’s infringement constituted a ‘potentially devastating threat to the business of Polaroid’ and that protection of Polaroid’s patents was crucial to its ability to *224 carry on its regular trade or business operations. Therefore, the patents can be characterized only as integral income-producing assets.
“In the case sub judice, the question becomes whether income from these integral assets should be classified as non-business income when that income is obtained as a result of court proceedings, rather than from marketplace sales. We hold that once a corporation’s assets are found to constitute integral parts of the corporation’s regular trade or business income resulting from the acquisition, management, and/or disposition of those assets constitutes business income regardless of how that income is received.”
Polaroid, supra, 349 N.C. at 295-96, 507 S.E.2d at 295-96. The court then distinguished such cases from “true” liquidation cases, which it deemed “inapplicable to these situations because the asset and the transaction at issue are not in furtherance of the unitary business, but rather a means of cessation.” Id. atn. 6 (emphasis added).
The North Carolina Supreme Court discussed Simpson Timber Co. v. Department of Revenue, 326 Or. 370, 953 P.2d 366 (1998) (monies received by a timber company as compensation for the Federal Government’s condemnation of timberland and timber constituted business income because the timber and the land on which it was growing were acquired and used as integral parts of business and income received from those assets, no matter how acquired, was business income), and Dover Corp. v. Department of Revenue, 271 Ill.App.3d 700, 648 N.E.2d 1089, 208 Ill.Dec. 167, app. den., 163 Ill.2d 552, 657 N.E.2d 618, 212 Ill.Dec. 417 (1995)(patent-infringe-ment judgment representing royalties constituted income, because the patents themselves were integral assets used in regular trade or business operations). The court continued:
“We find the holdings in Simpson Timber and Dover persuasive. It is undisputed that the Kodak judgment was designed to compensate Polaroid for Kodak’s infringements of its patents. Moreover, it is undisputed that Polaroid’s patents were an integral part of its regular trade or business operations. In fact, Polaroid’s primary source of income results from the sale of products based upon its patents. Therefore, given that the Kodak judgment constituted ‘income’ stemming from the ‘acquisition, management, and/or disposition’ of Polaroid’s integral assets and in lieu of normal marketplace sales, we hold that it should be classified as business income for North Carolina corporate income-tax purposes.”
Polaroid, supra, 349 N.C. at 308, 507 S.E.2d at 296-97.
In essence, Uniroyal’s trade or business was its investment in the partnership. The eventual sale of that interest, which obviously was driven by its desire for cash and profit, was a calculated process to maximize its return on investment. Hence, the Department’s assessment was correct.
Uniroyal also contends that the circuit court should not have increased the assessment to reflect underestimation and late-payment penalties because, it argues, no penalty should apply in this case. The circuit court was acting within its authority when it reinstated these penalties. § 40-2A-7(b)(5)d.l, Ala.Code 1975.
This opinion was prepared by Sam A. Beatty, Retired Justice, Supreme Court of Alabama, while serving on active-duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
AFFIRMED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
CRAWLEY and THOMPSON, JJ., dissent.