779 So.2d 227 (2000)
Ex parte UNIROYAL TIRE COMPANY.
(Re Uniroyal Tire Company v. State Department of Revenue).
1981928.
Supreme Court of Alabama.
August 4, 2000.
*228 Daniel H. Markstein III and Thomas H. Brinkley of Maynard, Cooper & Gale, P.C., Birmingham, for petitioner.
Jeff Patterson, asst. counsel, Department of Revenue, and asst. atty. gen., for respondent.
Bruce P. Ely and Peter C. Bond of Tanner & Guin, L.L.C., Tuscaloosa, for amicus curiae Committee on State Taxation.
COOK, Justice.
We granted the petition of Uniroyal Tire Company ("Uniroyal") for certiorari review of a judgment of the Court of Civil Appeals. That court affirmed a judgment in favor of the State Department of Revenue (the "Department"), holding that Uniroyal was liable for $2,148,178 in corporate income taxes and interest, on a capital gain of $99.7 million it realized from the liquidation in 1990 of all its business assets.
The essentially undisputed facts are set forth in the opinion of the Court of Civil Appeals as follows:
"In 1986, Uniroyal entered into a partnership with the B.F. Goodrich Company, wherein both corporations transferred their assets to the partnership and each received a 50% partnership interest. Thereafter, Uniroyal's only asset was its partnership interest, and between 1986 and 1989 Uniroyal treated income received from the partnership as business income. Then, in 1988, the partnership was recapitalized, resulting in Uniroyal's percentage of ownership in the partnership being reduced and in Uniroyal's receiving $80 million in cash.

*229 "Later, in 1990, Uniroyal sold its entire partnership interest for approximately $260,600,000 and realized a capital gain of approximately $99.7 million. On its 1990 Alabama tax return, Uniroyal treated the $99.7 million as nonbusiness income. The Department contested the return, maintaining that the $99.7 million was business income, and assessed corporate income tax accordingly. Uniroyal appealed to the Department's Administrative Law Division...."
Uniroyal Tire Co. v. State Dep't of Revenue, 779 So.2d 221, 222 (Ala.Civ.App.1999).
The Department assessed the tax on the basis of the term "business income," as it is defined in Ala.Code 1975, § 40-27-1, Art. IV, 1.(a), and in the Revenue Department Regulations then in effect, specifically Ala.Admin.Code r. 810-3-31.02(1)(a)4.(ii):[1]
"[§ 40-27-1, Art. IV, 1.(a) ] `Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."
"[Reg. 810-3-31-.02(1)(a)4.(ii) ] As a general rule, gain ... from the sale, exchange or other disposition of real or tangible or intangible personal property constitutes business income if the property while owned by the taxpayer was used to produce business income."
Uniroyal appealed the assessment to the Department's Administrative Law Division. The administrative law judge ("the ALJ") defined the issue as follows:
"The primary issue is whether [Uniroyal's] gain from the sale of a partnership interest in 1990 was business income, as defined by the above statute, and thus apportionable to Alabama, or `nonbusiness income,' and thus allocable entirely to [Uniroyal's] state of commercial domicile, Connecticut.
". . . .
"Generally speaking, [the statute] requires a corporation to apportion its business income among the various states in which the corporation does business using a standard three-factor formula of property, payroll, and sales. All other nonbusiness income is allocated directly to the corporation's state of commercial domicile...."
(Emphasis added.) The ALJ ruled in favor of Uniroyal, holding that the capital gain from the liquidation of partnership assets was "nonbusiness" income.
The Department appealed to the Montgomery Circuit Court, which entered a summary judgment in favor of the Department. Relying on Reg. § 810-3-31.02(1)(a)4.(ii), the trial court explained:
"`Here, Uniroyal admitted that its partnership interest produced "business" income while it was owned by Uniroyal. Contrary to the implication of the [ALJ], this regulation does not conflict with the statutory definition of "business" income and is not inconsistent with that definition. Instead, the regulation is reasonable.'"
Uniroyal appealed to the Court of Civil Appeals, which, over the strenuous dissent of two judges, affirmed the summary judgment. The majority stated: "We agree with the analysis of the North Carolina Supreme Court in Polaroid Corp. v. Offerman, 349 N.C. 290, 507 S.E.2d 284 (1998), and we find no conflict between the regulation and the statute." 779 So.2d at 223. *230 Uniroyal then sought certiorari review in this Court.[2] We reverse and remand.
The construction of § 40-27-1, Art. IV, 1.(a), and its relationship with the Department regulations are questions of first impression in this Court. Section 40-27-1, Art. IV, 1.(a), is a provision of the Multi-state Tax Compact (the "MTC"), as enacted by the Alabama Legislature in Act No. 395, 1967 Ala.Acts 982 (Reg.Session). The MTC "was created in 1966 to establish a uniform system for taxing multistate taxpayers and became effective in 1967 after various states had adopted it." State Dep't of Revenue v. MGH Management, Inc., 627 So.2d 408, 409 (Ala.Civ.App.1993). To date, there are 21 "compact member states"including Alabamathat is, states that have adopted the MTC. 1 All States Tax Guide (RIA) ¶ 564 (June 6, 2000). Article IV of the MTC incorporated the Uniform Division of Income for Tax Purposes Act (the "UDITPA").
The UDITPA was "approved" in 1957 by the National Conference of Commissioners on Uniform State Laws and the American Bar Association and "recommended... for adoption by the states." Comment, A Matter of (Statutory) Interpretation: North Carolina Recognizes the Functional Test of Corporate Taxation in Polaroid Corp. v. Offerman, 77 N.C.L.Rev. 2326, 2327 (1999). Its purpose was similar to that of the MTC, namely, "to address the problem of multiple taxation and to create a uniform method for allocating corporate income among the states entitled to tax a portion thereof." Id. The Alabama Legislature took verbatim from the UDITPA, § 1(a), the definition of "business income" in § 40-27-1, Art. IV, 1.(a), which is at issue in this case.
But the uniformity sought by the proponents of the UDITPA/MTC has been compromised by judicial disagreement over the definition of the term "business income." This disagreement has evolved into what is essentially a dichotomy in judicial construction of the definition. Indeed, two separate "tests" have developed as a result of the judiciary's attempts to determine when a gain is "business income."
A number of courts construing language functionally identical to that of § 40-27-1, Art. IV, 1.(a), have concluded that their statute contained only what is popularly described as the "transactional" test. See, e.g., Phillips Petroleum Co. v. Iowa Dep't of Revenue & Fin., 511 N.W.2d 608 (Iowa 1993); Western Natural Gas Co. v. McDonald, 202 Kan. 98, 446 P.2d 781, 783 (1968); McVean & Barlow, Inc. v. New Mexico Bureau of Revenue, 88 N.M. 521, 543 P.2d 489 (Ct.App.), cert. denied, 89 N.M. 6, 546 P.2d 71 (N.M.1975); General Care Corp. v. Olsen, 705 S.W.2d 642 (Tenn. 1986). Proponents of the transactional test find it "rooted in the statutory phrase, `earnings arising from transactions and activity in the regular course of the taxpayer's trade or business.'" General Care, 705 S.W.2d at 644 (emphasis added in General Care ). "Thus, under the transactional test, the `controlling factor by which business income [is defined] is the nature of the particular transaction giving rise to the income.' ... The frequency and regularity of similar transactions and the former practices of the business are pertinent considerations." Id. (quoting McDonald, supra).
Other courts construing the same language have concluded that their statute also contains an alternative test, which is popularly known as the "functional" test. See, e.g., Pledger v. Getty Oil Exploration Co., 309 Ark. 257, 831 S.W.2d 121 (1992); Texaco-Cities Serv. Pipeline Co. v. McGaw, 182 Ill.2d 262, 230 Ill.Dec. 991, 695 N.E.2d 481 (1998); and Laurel Pipe Line Co. v. Commonwealth, 537 Pa. 205, 642 A.2d 472 (1994); cf. Simpson Timber *231 Co. v. Department of Revenue, 326 Ore. 370, 953 P.2d 366 (1998) (Durham, J., concurring). Proponents of the functional test find it rooted in that second clause of the statute, which reads: "and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." "More broadly [than under the transactional test], under the functional test, all gain from the disposition of a capital asset is considered business income if the asset disposed of was `used by the taxpayer in its regular trade or business operations.'" Texaco-Cities Serv., 182 Ill.2d at 269, 230 Ill.Dec. 991, 695 N.E.2d at 484 (emphasis added). "Under the functional test ..., the extraordinary nature or infrequency of the sale is irrelevant." Id., 182 Ill.2d at 269, 230 Ill.Dec. 991, 695 N.E.2d at 484. Proponents of this view hold that "income constitutes business income if either one of the above tests is met." Id. (emphasis added).
The "functional test" is embodied in revenue department regulations adopted by various states. See Appeal of Chief Indus., Inc., 255 Kan. 640, 646-47, 875 P.2d 278, 283 (1994). Specifically, 15 states have adopted regulations promulgated by the Multistate Tax Commission "on allocation and apportionment of income generally and for specialized businesses" (the "Model Regulations"). 1 All States Tax Guide (RIA) ¶ 226-B (October 19, 1999). Alabama is among these 15 states. Id.; see also State v. Chesebrough-Ponds, Inc., 441 So.2d 598, 603 (Ala.1983); Bradley J. Sklar & W. Todd Carlisle, The Alabama Limited Liability Company Act, 45 Ala. L.Rev. 145, 175 n. 202 (1993) ("[t]he provisions of income tax regulation 810-3-31.02 are virtually identical to the model regulations promulgated by the Multistate Tax Commission under the [MTC]"). The Model Regulations were "intended to set forth rules concerning the application of the apportionment and allocation provisions of Article IV of the Multistate Tax Compact." 1 All States Tax Guide, at ¶ 630 (June 6, 2000). Under the Model Regulations and their state-revenue-department counterparts, "[g]ain or loss from the sale, exchange or other disposition of real property or of tangible or intangible personal property constitutes business income if the property while owned by the taxpayer was used in the taxpayer's trade or business." Id. at ¶ 633 (Mod.Reg.IV.1.(c)(2)); see Ala.Admin.Code r. 810-3-31-.02(1)(a)4.(ii). "In essence," under these regulations, "all income which arises from the conduct of trade or business operations of a taxpayer is business income." 1 All States Tax Guide, at ¶ 631 (Mod.Reg.IV.1(a)).
The Department urges us to adopt the view that § 40-27-1, Art. IV, 1.(a), contains both tests, and argues that gain from the sale of Uniroyal's partnership interest constitutes "business income" under either test. Uniroyal, on the other hand, contends that the statute contains only the transactional test and that gain from the sale of its partnership interest was not "business income" under that test. We agree with Uniroyal.
We consider this case within the context of two well-settled rules. First, "[t]axing statutes must be construed most strictly against the taxing authority and most favorably for the taxpayer." City of Arab v. Cherokee Elec. Co-op., 673 So.2d 751, 761 (Ala.1995); see also Siegelman v. Chase Manhattan Bank, N.A., 575 So.2d 1041, 1045 (Ala.1991); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219 (Ala.1984); Eagerton v. Terra Resources, Inc., 426 So.2d 807, 809 (Ala.1982); State v. Hall, 278 Ala. 359, 178 So.2d 518 (1965); Gotlieb v. City of Birmingham, 243 Ala. 579, 11 So.2d 363 (1943); State v. Seals Piano Co., 209 Ala. 93, 95 So. 451 (1923). The second rule was succinctly stated by the ALJ: "[W]hile a Department regulation interpreting a statute should be given weight, it must be rejected if it conflicts with the language of the statute." Uniroyal Tire Co. v. State *232 Dep't of Revenue, 779 So.2d at 232; see also Freeman v. City of Mobile, 761 So.2d 235 (Ala.1999); Jefferson County Bd. of Educ. v. Alabama Bd. of Cosmetology, 380 So.2d 913 (Ala.Civ.App.1980).
"`The starting point in every case involving construction of a statute is the language itself.' Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); see Watt v. Alaska, 451 U.S. 259, 265, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981)." Schwartz v. Volvo North America Corp., 554 So.2d 927, 934 (Ala.1989) (Hornsby, C.J., concurring in part and dissenting in part). To facilitate discussion, we shall parse § 40-27-1, Art. IV, 1.(a), into its two disputed clauses, referring to the first clause"income arising from transactions and activity in the regular course of the taxpayer's trade or business"as ¶ 1, and the remainder of the section as ¶ 2. It is undisputed that ¶ 1 contains the transactional test. The only question is whether ¶ 2 contains the alternative test.
Grammatically speaking, construction of the UDITPA definition of "business income" is a field that has been thoroughly plowed. Those courts that have construed their statute as containing both the transactional test and the functional test have done so on the rationale that ¶ 2 may operate independently of ¶ 1, and they have concluded that the grammatical structure of the statute supports that construction. As the North Carolina Supreme Court has explained it:
"First, grammatically speaking, business income constitutes the subject of the sentence, which is thereafter defined by two independent clauses, each with its own verb and subsequent definitional language. In fact, the statute could grammatically be read as stating: `Business income means income arising from transactions and activity in the regular course of the corporation's trade or business, and [business income] includes income from tangible and intangible property....' That is, N.C.G.S. § 105-130.4(a)(1) does not contain a misplaced modifier, but rather utilizes a compound predicate to illustrate that `business income' includes the definitions set forth in both the first and second clauses."
Polaroid Corp. v. Offerman, 349 N.C. 290, 297-98, 507 S.E.2d 284, 290-91 (1998) (adopting the functional-test alternative) (emphasis added).
Those courts that have construed their statute as containing only the transactional test, however, have "read [¶ 2] as simply modifying [¶ 1]," Polaroid Corp. v. Offerman, 349 N.C. at 295, 507 S.E.2d at 289 (emphasis added). See also Phillips Petroleum Co. v. Iowa Dep't of Revenue & Fin., 511 N.W.2d 608 (Iowa 1993). Under this approach, ¶ 2 is a "subset" of ¶ 1, in accord with the rule of construction known as the doctrine of the "last antecedent." See Kroger Co. v. Department of Revenue, 284 Ill.App.3d 473, 478, 220 Ill.Dec. 566, 673 N.E.2d 710, 713 (1996) (rejecting this construction and applying the functional test). In other words, ¶ 2 serves to exemplify "what fits within the definition." Polaroid, 349 N.C. at 297, 507 S.E.2d at 290.
These courts conclude that construing ¶ 2 to operate independently of ¶ 1 does not comport with the grammatical structure of the statute. For example, in General Care, supra, the court stated:
"We likewise reject the Commissioner's argument that income from the sale of property is to be considered business earnings if the property sold constituted an integral part of the taxpayer's business [regardless of whether it was a transaction or an activity `in the regular course of the taxpayer's trade or business].... In our opinion the Commissioner disregards the statute's clear grammatical structure by attempting to make the word `property' the subject of the clause upon which she bases her argument. The literal terms of the statute cannot be read to make the integral role of an asset in the taxpayer's business the controlling factor by which *233 business earnings are identified without doing violence to the elementary rules of grammar. The language the Commissioner relies upon cannot be lifted out of its context and construed without reference to the balance of the statute."
705 S.W.2d at 648 (emphasis added).
We agree with these observations of the Tennessee Supreme Court. But that court identified another, more troubling, weakness in the functional-test rationalethe fact that ¶ 2 is written in the conjunctive, not the disjunctive. Specifically, "income from ... property" is business income only if the "acquisition, management, and disposition... constitute integral parts of the taxpayer's ... business." (Emphasis added.) The court explained:
"We find the Commissioner's position that the `disposition' of property need not be within the scope of the taxpayer's regular business operations in order to give rise to business income contrary to the plain language of the statute. The drafters' use of the conjunction `and' clearly indicates that the disposition, as well as the acquisition and management of property must be an integral part of the taxpayer's regular trade or business operations in order to produce business earnings. This Court will presume that every word used in a statute was intended by the General Assembly to convey meaning and purpose.... `Where, as here, in a legislative act, words are used in a series, effect must be given to every word, and it must be presumed that the Legislature did not use three words where one would do....' R.J. Reynolds Tobacco Co. v. Carson, 187 Tenn. 157, 213 S.W.2d 45, 48 (1948). It is the duty of the Court `to construe a statute so that no part will be inoperative, superfluous, void, or insignificant ... and further to give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent.' Tidwell v. Collins, 522 S.W.2d 674, 676-77 (Tenn.1975)."
General Care, 705 S.W.2d at 646 (emphasis added).
This construction of the statute is shared by tax commentators, as the following three quotations illustrate:
"Applying the functional test as an independent alternative test essentially ignores the statutory requirement that business income must constitute an `integral part of the taxpayer's regular trade or business operations.' The words `integral,' `regular, and `operations' must be taken into account in analyzing the existence of business income. Merely examining whether an asset produced business income while owned by the taxpayer effectively ignores this very important part of the statute.
"Furthermore, even under the so-called functional test, the actual disposition transaction must be an integral part of the taxpayer's regular trade-or-business operations. The statute specifically requires that the `acquisition, management, and disposition of the asset' must be an integral part of the taxpayer's regular trade-or-business operations. (Emphasis added.) Therefore, to constitute business income, the capital gain transaction must have been in the regular course of the taxpayer's business operations, even if it involves the sale of an asset previously used in the taxpayer's business operations."
Dan A. Lisonbee, State of the Law of Nonbusiness Gain, 7 J.St.Tax. 333, 335-36 (1989);
"`[W]e believe that, as a matter of statutory construction, courts adopting the transactional test have the better of the argument. The language of UDITPA, after all, says that business income "includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business." The plain language of the statute thus requires that the "disposition" (as well as *234 the acquisition and management) of the property constitute an integral part of the taxpayer's trade or business. If the transaction is an extraordinary one, it is hard to see how the disposition can constitute an integral part of the taxpayer's regular trade or business.'"
Brief of Amicus Curiae Committee on State Taxation (see note 2) at 10 (quoting J. Hellerstein & W. Hellerstein, State Taxation ¶ 9.05[2][c] (3d ed.1998) (emphasis in State Taxation)).
"As a matter of pure statutory interpretation, the proponents of the view that the transactional test is the exclusive test under UDITPA have the better of the argument. The functional test may seem reasonable as a matter of tax policy, but it is hard to extract it from the language of the statute, inasmuch as the disposition of property under either the first or the second clause of the UDITPA definition of business income must be a normal incident of the business. The literal language of the second clause of the definition provides that gain from the sale of property will be business income only if the property's `disposition' is an integral part of the taxpayer's business. The word preceding the word `disposition' is `and'not `or'and it seems clear as a matter of statutory interpretation that the mere use of the property in the business is not enough to convert gain from its sale into business income. Property that is not regularly disposed of, but rather is held indefinitely, does not fit within the definition. The careful reading of the statute by the Tennessee [Supreme Court] in General Care is persuasive."
P. Faber, When Does the Sale of Corporate Assets Produce Business Income for State Corporate Franchise Tax Purposes? The Tax Executive 179, 187 (May-June 1995). We agree with these comments, and we add the following observations in regard to the use of the conjunction in ¶ 2.
We recognize the fact that "the legislature's use of the disjunctive conjunction `or,' as opposed to the conjunctive conjunction `and,' is not conclusive with respect to the legislature's intent," and that "this Court is at liberty in ascertaining the intent of the legislature to construe the disjunctive conjunction `or' and the conjunctive conjunction `and' interchangeably." Ex parte Jordan, 592 So.2d 579, 581 (Ala.1992) (emphasis added). However, "[w]hile there may be circumstances which call for an interpretation of the words `and' and `or,' ordinarily these words are not interchangeable." 1A Norman J. Singer, Sutherland Statutory Construction § 21.14 (5th ed.1993) (emphasis added). "The literal meaning of these terms should be followed unless it renders the statute inoperable or the meaning becomes questionable." Id. at 26 (Supp.2000) (emphasis added). See also Kearney v. Ahmann, 264 N.W.2d 768, 769 (Iowa 1978) ("When the word `or' is used it is presumed to be disjunctive unless a contrary legislative intent appears."); Boron Oil Co. v. Cathedral Found., Inc., 434 S.W.2d 640, 641 (Ky.1968) (court should not interchange "or" with "and," unless it is "obvious that the intent of the legislature would be thwarted if the change were not made"). To substitute by judicial construction the word "or" for the word "and" would significantly impact the scope of this statute.
Indeed, this distinction in statutory language formed one of the bases of the court's decision in Polaroid Corp. v. Offerman, 349 N.C. 290, 507 S.E.2d 284the case on which the Court of Civil Appeals primarily relied. Polaroid adopted and applied the functionaltest analysis and concluded that proceeds the Polaroid Corporation derived from a judgment in its favor in a patent-infringement action against Eastman Kodak Company were taxable as business income. However, unlike the Alabama statute, § 40-27-1, Art. IV, 1.(a), the North Carolina statute, N.C.Gen.Stat. § 105-130.4(a)(1)North Carolina's version of the UDITPAcontains the words "and/or" in place of "and" in ¶ 2 of § 40-27-1, Art. IV, 1.(a).
*235 In adopting the functional test, the court noted that "North Carolina's definition of business income is ... broader than the definition found under the Uniform Act." 349 N.C. at 294 n. 3, 507 S.E.2d at 288 n. 3. "Specifically," it explained, "North Carolina's definition reads `acquisition, management, and/or disposition of the property,' as opposed to the definition in UDITPA [and the definition in § 40-27-1, Art. IV, 1.(a) ], which uses the conjunction `and' rather than `and/or.'" Id. (emphasis added). Thus, under Polaroid's functional-test analysis, the income was taxable if it was either (1) acquired as a part of the taxpayer's "regular trade or business operations"; (2) managed as a part of the taxpayer's "regular trade or business operations"; or (3) disposed of as a part of the taxpayer's "regular trade or business operations."
We also deem it significant that, after their state courts failed to find the functional test in their statutes, two state legislatures amended their definition of "business income" by striking out the word "and" in ¶ 2, and substituting the word "or." N.M.Stat.Ann.1978, § 7-4-2 (responding to McVean & Barlow, Inc. v. New Mexico Bureau of Revenue, 88 N.M. 521, 543 P.2d 489, supra; Tenn.Code Ann., § 67-4-2004(1) (responding to General Care Corp. v. Olsen, 705 S.W.2d 642 (Tenn. 1986), and its progeny). Similarly, in response to Phillips Petroleum Co. v. Iowa Dep't of Revenue & Fin., 511 N.W.2d 608 (Iowa 1993), the Iowa legislature amended its statute to read as follows:
"`Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business; or income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations; or gain or loss resulting from the sale, exchange, or other disposition of real property or of tangible or intangible personal property, if the property while owned by the taxpayer was operationally related to the taxpayer's trade or business carried on in Iowa or operationally related to sources within Iowa, or the property was operationally related to sources outside this state and to the taxpayer's trade or business carried on in Iowa; or gain or loss resulting from the sale, exchange, or other disposition of stock in another corporation if the activities of the other corporation were operationally related to the taxpayer's trade or business carried on in Iowa while the stock was owned by the taxpayer."
Iowa Code § 422.32.2 (emphasis added).
We agree with Polaroid that the use of the word "or" in place of "and" in ¶ 2 broadens the scope of the statute. Considering all the circumstances, we decline the invitation to ignore the ordinary distinction between the words "and" and "or." With the substitution of the word "or" for "and" in ¶ 2, the statute could be construedif not as broadly as the proponents of the functional test construe itat least so broadly as to eclipse entirely the transactional test in ¶ 1.
Therein lies our greatest reservation about the Department's argument, which is that § 40-27-1, Art. IV, 1.(a), contains two alternative tests. The functional test, as embodied in Reg. 810-3-31.02(1)(a)4.(ii), is so broad that it essentially renders nugatory the transactional test. Under the functional test as represented by Reg. 810-3-31-.02(1)(a)4.(ii), "all gain from the disposition of a capital asset is considered business income if the asset disposed of was `used by the taxpayer in its regular trade or business operations.'" Texaco-Cities Serv., 182 Ill.2d at 268, 230 Ill.Dec. 991, 695 N.E.2d at 484 (emphasis added). Indeed, we know of no case in which it was held that gain was business income under the transactional test, but was not business income under the functional test, nor can we conceive of such a case. If income is business income under the transactional test, then, a fortiori, it is *236 business income under the functional test. In other words, the functional test would include everything that the transactional test includesand much more. Thus, under the alternative-test approach, ¶ 1 is a mere appendage without any real purpose.
"It must be presumed," however, that statutes are enacted with a "meaningful purpose." Adams v. Mathis, 350 So.2d 381, 385-86 (Ala.1977). "The Legislature will not be presumed to have done a futile thing in enacting a statute." Ex parte Watley, 708 So.2d 890, 892 (Ala. 1997). See also Ex parte Robinson, 361 So.2d 1113, 1114 (Ala.1978). "`There is a presumption that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.'" Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.), cert. denied, 708 So.2d 911 (Ala.1997); McDonald v. State, 32 Ala.App. 606, 609, 28 So.2d 805, 807 (1947) ("A legislature will not be presumed to use language without any meaning or application...."). For the reasons discussed above, we decline to hold that § 40-27-1, Art. IV, 1.(a), also contains a functional test.
From this conclusion, it follows that Reg. 810-3-31-.02(1)(a)4.(ii), cannot constitute authority for the collection of the tax in this case. This is so, because, as the embodiment of the broader functional test, it would authorize tax that § 40-27-1, Art. IV, 1.(a), does not. To the extent that it would do so, it directly conflicts with the statute. This, it may not do. Freeman v. City of Mobile, 761 So.2d 235 (Ala.1999); Jefferson County Bd. of Educ. v. Alabama Bd. of Cosmetology, 380 So.2d 913 (Ala. Civ.App.1980); Jordan v. City of Mobile, 260 Ala. 393, 71 So.2d 513 (1954).
A complete liquidation and cessation of business do not generate business income under the transaction test. Associated Partnership I, Inc. v. Huddleston, 889 S.W.2d 190 (Tenn.1994). This is so, because, by definition, such events are most extraordinary; they do not occur in the "regular course of the taxpayer's trade or business."
"Regular" has been defined as "steady or uniform in course, practice, or occurrence: not subject to unexplained or irrational variation: steadily pursued; orderly, methodical"; even as "returning, recurring, or received at stated, fixed or uniform intervals ...; functioning at proper intervals." Webster's Third New International Dictionary of the English Language Unabridged 1913 (1971) (emphasis added). Clearly, the word, "regular" in the phrase "regular course of the taxpayer's trade or business" refers to an ongoing business concern.
Huddleston involved the merger of Associated Partnership II ("AP II") into its "parent corporation," Associated Partnership I ("AP I"). 889 S.W.2d at 192-94. "This merger was, for federal income tax purposes ..., a complete liquidation, terminating the corporate existence of AP II. Pursuant to the liquidation, the proceeds from the sale of AP II's partnership interest, a capital gain of $122,400,783 passed to AP I." 889 S.W.2d at 194. "Throughout its existence, the only assets owned by AP II were its interest as a general partner in [Whittle Communications LP, a limited partnership (`WCLP')] and [a] bank account in Knoxville set up to receive partnership distributions." Id. at 193. The litigation in Huddleston challenged the right of the Tennessee Department of Revenue to tax the proceeds from the sale of AP II's partnership interest as "business income," as that term was then defined in Tenn.Code Ann., § 67-4-804(a)(1).[3]
Applying the transactional test, the Tennessee Supreme Court held that the sale *237 of the partnership interest did not generate business income. Specifically, it explained:
"In this case, AP II's sole business was holding and managing a partnership interest in WCLP. The only other asset it controlled during is existence was a bank account in Knoxville maintained for receiving distributions from WCLP. Prior to liquidation, AP II had never sold or transferred an interest in any asset.... The ... transaction was not a frequent and reoccurring transaction. It contemplated, and resulted in, the complete cessation of business and the termination of AP II's corporate existence. It was contrary to former business practices, in that it was the only sale of any asset that occurred during AP II's corporate existence. Finally, AP II did not use the proceeds from the sale in its ongoing trade or business. In fact, there was no ongoing trade or business because AP II was liquidated as part of the same transaction, and ceased to exist as a corporation."
Id. at 196.
The Department attempts to distinguish Huddleston on the ground that the Uniroyal partnership, unlike the AP II partnership, was once "recapitalized, resulting in Uniroyal's percentage of ownership in the partnership being reduced and in Uniroyal's receiving $80 million in cash." Uniroyal Tire Co. v. State Dep't of Revenue, 779 So.2d at 228. The Department contends that the liquidation in 1990 "was one more step in a calculated process to maximize Uniroyal's return on its investment and to receive cash from the Partnership." Subsequent Reply Brief of Respondent, at 25.
This distinction is unpersuasive, if not irrelevant. The 1990 transaction resulting in the complete liquidation of the corporate assets and cessation of business differed qualitatively from the 1988 recapitalization transaction. From 1986 to 1989, Uniroyal paid taxes on the income received from the partnership as business income apportionable to Alabama. Indeed, as the Department points out, "Uniroyal's trade or business was its investment in the Partnership." Id. at 22 (emphasis added). However, Uniroyal's divestment of its partnership interest was not "essential to [its] business operations." Nor was it "regular," as part of a "steady or uniform... course, practice, or occurrence." Simply stated, Uniroyal was not in business to go out of business. Going out of business is not a "regular" business activity. Thus, the complete liquidation of Uniroyal's business through the sale of its partnership interest did not yield business income under the transactional test as set forth in § 40-27-1, Art. IV, 1.(a).
Moreover, even courts applying the functional test have excepted true liquidations from its application. For example, Polaroid, on which the Court of Civil Appeals relied, stated: "We do note, however, that cases involving liquidation are in a category by themselves. Indeed, true liquidation cases are inapplicable to these situations because the asset and transaction at issue are not in furtherance of the unitary business, but rather a means of cessation." 349 N.C. at 306 n. 6, 507 S.E.2d at 296 n. 6.
Other courts agree with this distinction. In Laurel Pipe Line Co. v. Commonwealth, 537 Pa. at 205, 642 A.2d 472, supra, for example, the Pennsylvania Supreme Court held that gain from the sale by a "[m]ultistate corporate taxpayer engaged in pipeline transportation of petroleum products," 642 A.2d at 472 (West synopsis of case), of an "idle pipeline and related assets," id., 537 Pa. at 207, 642 A.2d at 473, amounted to a liquidation of "a portion of its assets," and, consequently, was not business income. Id., 537 Pa. at 211, 642 A.2d at 475.
The Pennsylvania court first concluded that the sale did not satisfy the "transactional" test. In discussing the "functional" test, the court noted: "Income meets the functional test if the gain arises from the *238 sale of an asset which produced business income while it was owned by the taxpayer." Id. The court then explained:
"The Aliquippa-Cleveland pipeline had been idle for over three years prior to the time that it was sold. In our view, the pipeline was not disposed of as an integral part of Laurel's regular trade or business. Rather, the effect of the sale was that the company liquidated a portion of its assets. This is evidenced by the fact that the proceeds of the sale were not reinvested back into the operations of the business, but were distributed entirely to the stockholders of the corporation. Although Laurel continued to operate a second, independent pipeline, the sale of the ... pipeline constituted a liquidation of a separate and distinct aspect of its business."
Id. (emphasis added). Thus, the court concluded that the gain from the sale of the pipeline was business income under neither test.[4] See also Western Natural Gas Co. v. McDonald, 202 Kan. 98, 446 P.2d 781 (1968); McVean & Barlow, Inc. v. New Mexico Bureau of Revenue, 88 N.M. 521, 543 P.2d 489 (Ct.App.) (holding that gain from the sale of pipeline equipment in partial liquidation of taxpayer's business did not constitute business income; the dissent of Lopez, J., conceding that a true liquidation and cessation of business does not yield business income), cert. denied, 89 N.M. 6, 546 P.2d 71 (N.M. 1975); cf. Texaco-Cities Serv. Pipeline Co. v. McGaw, 182 Ill.2d 262, 273, 695 N.E.2d 481, 486 (1998) (distinguishing Laurel on the ground that Laurel represented a true liquidation of a "separate and distinct aspect" of the taxpayer's business). But see Huddleston, 889 S.W.2d at 196 (holding that liquidation of a partnership did not produce business income, but stating in dicta that "no significance is attached to the fact that a transaction involves a liquidation" under the functional test). Indeed, the Department has not directed us to any case holding that gains realized from a complete liquidation and cessation of business operations produced business income.
We express no opinion as to how an amendment of the statute to substitute the disjunctive "or" for the conjunctive "and" might affect cases involving true liquidations. However, we are clear to the conclusion that under our statute as it is currently constituted, true liquidations do not generate "business income" within the meaning of § 40-27-1, Art. IV, 1.(a).
In summary, we hold (1) that § 40-27-1, Art. IV, 1.(a), contains the transactional test for determining when gain from multistate business operations may be taxed as "business income"; (2) that the 1990 disposition of the Uniroyal partnership interest was not "business income" as determined by that test; (3) that § 40-27-1, Art. IV, 1.(a), does not contain the "functional test"; and (4) that Reg. 810-3-31-.02(1)(a)4.(ii), to the extent it does embody the functional test, conflicts with § 40-27-1, Art. IV, 1.(a), and is, therefore, inapplicable. For these reasons, the judgment of the Court of Civil Appeals is reversed and the cause is remanded for an order or proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SEE, LYONS, JOHNSTONE, and ENGLAND, JJ., concur.
HOUSTON, J., dissents.
HOUSTON, Justice (dissenting).
I agree with the State Department of Revenue, the Alabama Court of Civil Appeals, and Polaroid Corp. v. Offerman, 349 N.C. 290, 507 S.E.2d 284 (1998). The use *239 of "and/or" instead of "and" in the phrase "acquisition, management, and [and/or] disposition" would be irrelevant in this case.
NOTES
[1] This provision was superseded by regulations that became effective for tax years beginning after December 31, 1996. See Ala.Admin.Code r. 810-27-1-4-.01. Because the transaction at issue in this case occurred in 1990, the revised regulations are not at issue.
[2] The Committee on State Taxation, as amicus curiae, filed a brief in support of Uniroyal's position.
[3] Although, as we noted previously in this opinion, the Tennessee Legislature eventually amended § 67-4-804(a)(1) by substituting the word "or" for "and," Huddleston was based on the pre-amendment version.
[4] Under Polaroid's analysis, Uniroyal's gain would not be "business income" because the transactional-functional tests are inapplicable to liquidation cases. Under the analysis of Laurel, the gain realized by Uniroyal would not satisfy either test advocated by the Department. Uniroyal's gain would not be "business income" because liquidations are not dispositions "as an integral part of [the corporation's] regular trade or business."