44 So.3d 502 (2010)
Ex parte GORDON, DANA, STILL, KNIGHT & GILMORE, LLC, as successor to Gordon & Associates, LLC.
(In re Gordon, Dana, Still, Knight & Gilmore, LLC, as successor to Gordon & Associates, LLC
v.
Jefferson County).
1090381.
Supreme Court of Alabama.
March 5, 2010.
John G. Dana of Gordon, Dana, Knight & Gilmore, L.L.C., Birmigham, for petitioner.
Submitted on petitioner's brief only.
Prior report: Ala.Civ.App., 44 So.3d 491.
STUART, Justice.
The petition for the writ of certiorari is denied.
*503 In denying the petition for the writ of certiorari, this Court does not wish to be understood as approving all the language, reasons, or statements of law in the Court of Civil Appeals' opinion. Horsley v. Horsley, 291 Ala. 782, 280 So.2d 155 (1973).
WRIT DENIED.
COBB, C.J., and LYONS, WOODALL, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., dissents.
MURDOCK, Justice (dissenting).
I am concerned that the trial court and the majority of the Court of Civil Appeals have taken a standard intended to guide the tax assessor in the performance of duties that constitute part of the process of determining the fair market value of a propertyi.e., the exercise of his or her "best judgment" as to fair-market value and substituted it for the "fair-market-value" standard itself, the standard upon which the law ultimately requires ad valorem taxes be based.[1]
My concern is based upon my reading of the entirety of the trial court's order as quoted with approval by the Court of Civil Appeals, as well as other portions of the majority opinion of that court. Included in the Court of Civil Appeals' opinion is the following quotation from the trial court's order:
"`Clearly the tax assessor cannot give an individual appraisal of every item of personal property used in every business in Jefferson County which is subject to taxation. Such an effort would likely cost more than the tax collected. Thus, the states have established systems for ascertaining the fair market value of personal property. The system works very well in Alabama and in other states, and this court concludes that the existing method provides a workable and practical way to tax personal property. The method is applied across the board to all taxpayers. The Gordon firm has not been discriminated against.'"
Gordon, Dana, Still, Knight & Gilmore, LLC v. Jefferson County, [Ms. 2071028, June 26, 2009] 44 So.3d 491, 494 (Ala.Civ. App.2009) (quoting trial court's order).
Based on this and other portions of the trial court's order, Judge Moore concludes in his dissent that "the trial court did not make any finding regarding the main issue litigated by the partieswhether the composite-factor method used by the tax assessor produced the correct fair market value of the personal property of the taxpayer" in this particular case. Gordon, 44 So.3d at 502 (Moore, J., dissenting). In fairness, the paragraph in the trial court's order that follows the above-quoted passage begins with the statement that "`[u]pon consideration of the evidence and the law, the Court finds that the plaintiff[, Gordon, Dana, Still, Knight & Gilmore, LLC,] did not carry its burden in support of its contention that the fair market value *504 assessed by the Tax Assessor was inaccurate or invalid.'" Gordon, 44 So.3d at 494 (quoting trial court's order). Much of the balance of the trial court's order, however, belies the notion that the trial court meant anything by the foregoing, other than that the plaintiffGordon, Dana, Still, Knight & Gilmore, LLC ("the Gordon firm") failed to carry some burden of showing a deficiency in the "mass-appraisal grid method" as a generally acceptable tool for use by the Jefferson County tax assessor in making the extremely large number of initial assessments that he or she is required to make. As noted, the trial court concluded that this method "`provides a workable and practical way to tax personal property,'" that the method "`is applied across the board to all taxpayers'" and that the Gordon firm "`has not been discriminated against.'" Gordon, 44 So.3d at 494 (quoting trial court's order) (emphasis added). Furthermore, the trial court's order includes the following:
"`The Tax Assessor followed and complied with the statutory procedures governing the assessment of escape taxes. See § 40-7-23(d), [Ala.Code 1975,] "the assessing official shall give notice of an escape assessment by certified or registered mail ... to the agent or attorney of such owner, notifying such person to appear before the assessing official in person, or by agent or attorney, ... if there is an objection to the assessment.... If on the date set for hearing such objection the person against whom the assessment is made fails to appear or if in the opinion of the assessing official the assessment should not be changed and the assessment is proper, then the assessing official shall make the assessment final."
"`The discretion vested in Alabama Tax Assessors was discussed at length in the case styled Howell v. Malone, 388 So.2d 908 (Ala.1980). That case dealt with the classification of real property for assessment purposes, but the broader discussion of the Tax Assessor's interpretive discretion is equally applicable to the case at bar. The Court held that although neither the Constitution nor the Legislature vested absolute discretion in the Assessor, it did instill in them "interpretive discretion." 388 So.2d at 915. Specifically, the Supreme Court approved the interpretations made by various Tax Assessors of the State in defining the meaning of "single family owner occupied residential property." If the Tax Assessors can apply discretion in interpreting the terms used in various sections of Title 40 relating to real property, it follows that they have the same interpretive discretion with respect to the provisions of Title 40 applicable to business personal property.[2]
"`In the instant case, Tax Assessor Dan Weinrib declined to exercise his discretion and followed the State Appraisal Manual in arriving at a fair market value of Gordon's business personal property. It has not been shown that the exercise of that discretion is arbitrary or capricious, but instead, it is reasonable and well-founded upon appraisal rules and regulations.

"`The Tax Assessor testified that in all assessments of personal property it follows the State Appraisal Manual, which contains a grid that applies to the *505 cost data provided by the taxpayer to determine the current fair market value of each item of personal property. Although the appraisal manual is a guide to the determination of fair market value of items of personal property, there must be good reason for the Tax Assessor to depart from the application of the procedures and format for mass appraisals set forth in the manual.
"`As the deposition testimony of State Revenue Department Division Head, Will Martin, indicated, there must be some extraordinary reason to depart from the dictates of the manual, including the grid or table therein for fixing fair market value of personal property. The Court finds that there was no substantial reason to depart from the procedures set forth in the manual in this case.[3]
"`As stated in the preface to the Appraisal Manual, "The purpose of this manual is to establish basic methods and procedures to be used in the Alabama personal property appraisal process, and to insure statewide property appraisal equity by serving as a reference manual to all Alabama assessing and appraising personnel." Further, it is stated on page 1 that the purpose of the manual is as follows, "This manual is published for the purpose of implementing the procedures, requirements, programs, and policies of the Department of Revenue to appraise, value, and equalize business personal property assessments in Alabama." And, tax assessing officials are doing a step by step guide to the valuation process[.] "These procedures should be used by the county taxing official and appraisal staff in order to assure equity and uniformity in valuing the many types of personal property. We have prepared these guidelines in an effort to help simplify the complex problems that are presented by the appraisal of personal property." Importantly, Section VII(B)(2), directs the assessor to "use the grid valuation section of the worksheet to arrive at the market value of personal property whenever a grid is applicable." In fact, there is a section in the Appraisal Manual applicable to the assessment of personal property ordinarily found in the offices of attorneys. (Appraisal Manual at pp. 2-3) The economic life of these items is set at ten years according to the Appraisal Manual.
"`In summary, it is undisputed that the Tax Assessor applied the grid applicable to attorney offices contained in the Appraisal Manual. Whether this grid method of mass appraisal is always an accurate reflection of fair market value *506 is not for the Court to decide in this appeal. This case is limited to the returns in question and upon which this case was tried. Notwithstanding this limitation, the Court expressly finds that the use of the Appraisal Manual for the [Gordon firm's] personal property in this case was appropriate and that there were not extenuating or unusual circumstances to dictate departure from the use of the appropriate attorney personal [property] grid contained in said Manual.'"
Gordon, 44 So.3d at 496 (quoting trial court's order) (emphasis added).
In contrast to the views that appear to be embodied in the trial court's order, whether the mass-appraisal grid method used by the tax assessor resulted in an accurate "fair market value" of the particular property at issue in this case was what the trial court was called upon to decide. Although the tax assessor may be fully authorized to use the "mass-appraisal grid method" as a tool to make his "best judgment" as to property values, ultimately, the prescribed statutory standard remains: Ad valorem taxes are to be levied only on the "fair market value" of the property. If the taxpayer can satisfy his or her burden of proof and establish that the mass-appraisal grid method is not an "accurate reflection of fair market value" in his or her particular case, that is exactly the situation in which the court is supposed to step in and assign the accurate value to the property. It is not necessary to show "extraordinary reasons" for departing from the mass-appraisal grid method. See supra note 3.
It is true, as the Court of Civil Appeals points out in its opinion, that the applicable statute stated that a tax assessor "`shall, from information entered on the tax return list and all other information known to him, or which he may procure, proceed to ascertain what, in his best judgment, is a fair and reasonable market value of each item of property returned by or listed to any taxpayer....'" Gordon, 44 So.3d at 494, 496 (quoting § 40-7-75, Ala.Code 1975, as it read before an Amendment effective September 1, 2007). This does not mean that when the taxpayer believes the assessor's "best judgment" is in error, or that the tax assessor's use of a procedural device for doing his or her job has resulted in an incorrect valuation, the taxpayer does not have the right to challenge that "best judgment" or a grid-based valuation with appropriate evidence. According to Judge Moore's dissenting opinion, two experts criticized the "composite-factor method" used by the tax assessor to determine the economic life and depreciation rate of personal property and a total of five experts testified to "lower values than those used by the tax assessor" in this particular case. 44 So.3d at 499.
My concern that the trial court and the Court of Civil Appeals have, in this case, effectively changed the statutorily prescribed basis of taxation from the actual "fair market value" of the property to merely the tax assessor's "best judgment as to the fair market value of the property" is explicitly borne out by the following statement in the Court of Civil Appeals' opinion:
"[The Gordon firm] argues that the trial court erred in affirming the tax assessor's assessment because, [the Gordon firm] says, (1) §§ 40-7-25 and 40-7-62, Ala.Code 1975, require the tax assessor to assess each item of personal property at its `fair market value' and (2) the Alabama courts have defined `fair market value' as `the sum arrived at by fair negotiation between an owner willing to sell and a purchaser willing to buy, neither being under pressure to do so.' However, § 40-7-25, as it was worded *507 before September 1, 2007, actually stated that a tax assessor `shall, from information entered on the tax return list and from all other information known to him, or which he may procure, proceed to ascertain what, in his best judgment, is a fair and reasonable market value of each item of property returned by or listed to any taxpayer....' (Emphasis added.) Our supreme court has held that when construing the language of a statute, this court must presume `"that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used."' Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala.2000) (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997)). The definition of fair market value indicates that the actual fair market value of an item of property can only be ascertained if the owner willingly offers it for sale and reaches an agreement on a price with a willing buyer.[4] However, the legislature's inclusion of the words `in his best judgment' and `reasonable' in § 40-7-25 indicates that the legislature intended to require that tax assessors estimate a reasonable fair market valuethe legislature did not intend to require tax assessors to determine the actual fair market value. Therefore, there is no merit to [the Gordon firm's] argument that the circuit court erred on the ground that the relevant statutes required the tax assessor to determine the actual fair market value of [the Gordon firm's] property."
Gordon, 44 So.3d at 496-97.
As I stated, I believe there is "merit to [the Gordon firm's] argument" and that this is so precisely because the circuit court is indeed required to determine the actual fair market value of the Gordon firm's property. If the taxpayer has presented persuasive evidence that that value is something less than the value that has been determined by the application of the procedures employed by the tax assessor's office, then the taxpayer is entitled to a finding to this effect by the circuit court. Although the tax assessor may use those procedures and his or her "best judgment" as part of the statutorily authorized valuation process, part of that statutorily prescribed process also is a de novo trial regarding the value of the property if the taxpayer believes that the process used by the tax assessor has resulted in an inaccurate valuation. As Judge Moore correctly notes in his dissent:
"In this case, the taxpayer appealed from two final assessments. In an appeal from a final assessment of personal-property ad valorem taxes, the appeal `shall be tried as other cases appealed to the circuit court from the board of equalization.' Ala.Code 1975, § 40-7-23(d). In appeals from rulings of the board of equalization,
"`[i]f from all the evidence the court is of the opinion that the valuation is either too high or too low, it shall render a judgment fixing such valuation as it may deem fit. ... It shall *508 decide all questions as to the legality of the assessment and the valuation of the property ....'
"Ala.Code 1975, § 40-3-25. Construing similar language in an income-tax case, our supreme court determined that § 40-3-25 contemplated a de novo proceeding before the trial court. See State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342 (1943); see also State v. Pollock, 251 Ala. 603, 38 So.2d 870 (1948). Thus, it is the duty of a trial court, in hearing an appeal from a final assessment like the ones in this case, to decide for itself, based, on all the evidence before it, the value of the personal property."
Gordon, 44 So.3d at 501 (Moore, J., dissenting) (emphasis added). As Judge Moore goes on to explain, although the "best judgment" of the tax assessor is considered "prima facie correct," 44 So.3d at 501, the process contemplates that that prima facie showing may be rebutted by the taxpayer with competent evidence that proves otherwise.
I believe that the petition in this case has sufficiently described and quoted from the majority opinion of the Court of Civil Appeals and conflicting decisions of that court and of this Court so as to provide an appropriate basis for granting certiorari review. Because I would grant the writ of certiorari and consider this case further, I respectfully dissent.
NOTES
[1] Sections 40-7-25 and 40-7-62, Ala.Code 1975, require that property be assessed at its "fair market value." Although the statutory term in both of these sections is "fair and reasonable market value," this Court has long treated the term "fair and reasonable market value" as synonymous with "fair market value," which is defined as "that price [at] which one is willing to sell to one who is willing to buy with both having reasonable knowledge of the facts." State v. Great Valley Land & Inv., 53 Ala.App. 49, 51-52, 297 So.2d 375, 377 (Ala.Civ.App.1974). See Bynum Bros. v. State, 216 Ala. 102, 112 So. 348 (1927). See also Black's Law Dictionary 597 (6th ed.1990): defining "fair market value" as "[t]he amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts."
[2] I cannot agree that it "follows" that, if a tax assessor has some discretion in applying the terminology in the tax statute such as "single family owner occupied residential property," then the assessor would have discretion to tax property at his or her "best judgment" of its fair market value rather than at its actual "fair market value," when the latter is ultimately determined to be different from the former.
[3] It may be assumed for the sake of discussion that there must be "good reason" for an assessment other than that arrived at by the tax assessor under the "procedures and format for mass appraisals set forth in the manual." That good reason, however, by statute, would appear to be nothing other than proof sufficient to persuade a finder of fact that the specific items of personal property in question have a fair market value different from the market valuation placed on them by the "mass appraisal grid" authorized by the manual. A requirement of "extraordinary reasons to depart from the dictates of the manual" or of "extenuating or unusual circumstances to dictate departure from the use of the appropriate attorney personal [property] grid contained in said Manual" (as to the latter, see quotation of trial court order, infra) simply does not appear rooted in the statute. To the contrary, requiring such a showing would appear to be contrary to the specific provisions of the statute requiring the taxation of personal property at its "fair market value" and to provisions allowing taxpayers a de novo circuit court trial for the specific purpose of presenting evidence to persuade the court that their property does in fact have a value that is different from the value arrived at using the "procedures and formats" authorized for use by the tax assessor merely as tools in the assessment process.
[4] It is not necessary that an owner actually offer his property for sale and reach an agreement with a willing buyer in order for "actual fair market value" to be determined. Fair market value is merely that price at which the property would sell if there were a willing seller and a willing buyer. Expert opinion testimony, the price at which the property actually sold at some point in the past, the landowner's own testimony, and evidence of sales of comparable properties, among other things, may be used in an effort to establish that price at which the property would sell if there were a willing seller and a willing buyer.