# WOOD v. UNITED STATES.
## No. 43276.

Court of Claims.

Nov. 6, 1939.

Frank J. Albus, of Washington, D. C. (Virgil Y. Moore, of Washington, D. C., George M. Naus, of San Francisco, Cal., and Andrew T. Smith, of Washington, D. C., on the briefs), for plaintiff.

Daniel F. Hickey, of Washington, D. C., and James W. Morris, Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, Sp. Assts. to Atty. Gen., on the briefs), for the United States.

Before WHALEY, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHITAKER, Judges.

WILLIAMS, Judge.

The sole question for decision in this case is one of fact—the fair market value of 2,323,278 shares of common stock of the E. K. Wood Lumber Co., owned by decedent Walter T. Wood on September 25, 1929, the date of his death.

The executor of the estate placed a valuation of $1 a share on this stock in the Federal estate-tax return made by him. That valuation was not changed by the Commissioner of Internal Revenue and the stock was included in the decedent's gross estate at a valuation of $2,323,278. Subsequently the executor filed a claim for refund of $23,253.94, assigning as the basis therefor the following:

"The assets of the estate of Walter T. Wood included 2,323,278 shares of the common stock of the E. K. Wood Lumber Co., San Francisco, California, which were entered in the Federal estate-tax return of said estate at a value of $1.00 per share or $2,323,278.00. This value was predicated upon the book value of the said stock at the date of decedent's death together with an isolated sale which was consummated more than a year before such date and appraisals of the said stock for estate-tax purposes in 1928 and prior years. The company's earnings record during the previous five years, its business prospects at the date of decedent's death, conditions in the timber industry as a whole, the absence of an open market for the stock, the lack of marketability of many of the company's properties and other important factors were not considered in arriving at such appraised value.

"Based on a consideration of the above factors, the value has been recomputed at 50 cents a share, which results in a corrected estate-tax liability, after giving effect to the eighty percent credit for State inheritance tax of $20,423.67 and an allowable refund of $23,253.94."

The claim for refund was disallowed by the Commissioner and thereafter this suit was timely instituted by the executor.

The legal definition of "fair market value" is well established. In Phillips v. United States, D.C., 12 F.2d 598, 601, the rule is stated: "The test is the fair market value. This may be defined to be the value of the property in money as between one who wishes to purchase and one who wishes to sell; the price at which a seller willing to sell at a fair price, and a buyer willing to buy at a fair price, both having reasonable knowledge of the facts."

The rule is also succinctly stated by the Supreme Court in Adams Express Co. v. Ohio State Auditor, 166 U.S. 185, 17 S.Ct. 604, 606, 41 L.Ed. 965:

"Now, it is a cardinal rule, which should never be forgotten, that whatever property is worth for the purposes of income and sale it is also worth for purposes of taxation. * * *

"The value which property bears in the market, the amount for which its stock can be bought and sold, is the real value. Business men do not pay cash for property in moonshine or dreamland. They buy and pay for that which is of value in its power to produce income, or for purposes of sale."

The E. K. Wood Lumber Company was what is known as a closed or family corporation, the E. K. Wood and related families owning 98 percent of the stock. The stock was not listed on any stock exchange. It is a well recognized fact that stock in such a corporation is hard to sell and is not readily marketable, there being no market except that afforded by the few other stockholders. Cartier v. Commissioner, 6 Cir., 37 F.2d 894; Dohrmann v. Commissioner, 19 B.T.A. 507.

Aside from the inherent difficulty in finding a market for the stock of a family corporation the market value of the stock in question was adversely affected by the unfavorable conditions of the lumber industry generally at the time of decedent's death in 1929. Prior to the year 1924 there had been a great and continually increasing demand for lumber in the northwest and well-managed lumber concerns earned large profits and were quite prosperous. Beginning, however, in the early part of 1924 the demand for lumber began to decline and continued to do so during the remainder of that year and through the years 1925, 1926, 1927, 1928, and 1929. By 1929 the earnings of lumber concerns had reached substantially the point of no earnings at all and the stocks and property of such concerns practically ceased to be marketable at any price. During this period there was an excess production of lumber and much of what is known in the lumber industry as "distress" lumber found its way to the market. Lumber companies generally throughout the Pacific northwest were in distress financially. Many of them began to go into receivership as early as 1925; this process continued throughout 1926, 1927, 1928, and 1929, and for some years thereafter.

The unprosperous condition of the E. K. Wood Lumber Company in 1929 is shown when comparison is made of the net earnings of the company for the five-year period 1925 to 1929, inclusive, $332,367.70, with the preceding five-year period 1920 to 1924, inclusive, $3,878,777.75. The earnings of the company dropped from $1,606,-880.75 for the year 1923 to $13,645.81 for the year 1929. Instead of the large and continually increasing earnings of the company that prevailed prior to the year 1924 such earnings had decreased steadily until by September, 1929, they had substantially reached the point of no earnings at all. These earnings vanished entirely during the following five-year period during which large net losses were sustained annually.

It is a well-recognized rule that comparable sales of stock at about the basic date involved afford evidence of value and are to be considered in arriving at the fair market value, but such sales and the price paid is not necessarily decisive of fair market price or value. Heiner v. Crosby, 3 Cir., 24 F.2d 191; Will M. Ott v. Commissioner, 15 B.T.A. 867; Walter v. Duffy, 3 Cir., 287 F. 41. Thus sales made under peculiar and unusual circumstances, such as sales of small lots, forced sales, and sales in a restricted market, may not signify a fair market price or value. As we have seen the stock of the E. K.

860

Wood Lumber Company was not listed on any stock exchange and was not salable in the open market. The defendant in its contention that the stock was worth $1 a share, aside from the testimony of a single witness that that was its value, relies on a single transaction occurring on August 13, 1928, wherein the decedent and the general manager of the company bought 12,623 shares from the decedent's nephew at that price, the decedent acquiring in the transaction 9,153 shares, and the general manager of the company 3,470 shares.

 This transaction was an isolated one, the only one shown involving the purchase and sale of the stock of the E. K. Wood Lumber Company subsequent to the year 1922 when the company was earning large dividends and enjoying great prosperity. The transaction involved a relatively small block of shares, representing only about 15/100 of one percent of the stock of the company. The sale of this relatively insignificant block of stock at a par value of $1 a share is not sufficient to establish that price as the fair market value of the stock, MacRae v. Commissioner, 9 B.T.A. 428; Yochim Brothers Co., Ltd., v. Commissioner, 6 B.T.A. 984, and is entitled to very little weight in a determination of such value.

Plaintiff has introduced the opinion testimony of four witnesses in support of her contentions in respect to the fair market value of the stock of the E. K. Wood Lumber Company on the basic date involved, September 25, 1929. Two of these witnesses were familiar with the property of the company. One had only slight familiarity with the property but was conceded to be an expert in ascertaining the fair market value of corporate stocks. The other was president of a competitive lumber company and had formerly been connected with a financial institution in the Pacific northwest which specialized in financing lumber companies. He was a recognized expert in arriving at the fair market value of Pacific coast lumber stocks generally. These witnesses testified that the fair market value of the stock in question was less than 50 cents a share.

The defendant introduced the opinion testimony of but one witness, who, while not familiar with the property of the company, was unquestionably competent to give expert testimony as to the fair market value of the stock in question. This wit-

ness placed the fair market value of the stock at $1 a share.

The commissioner of the Court to whom the case was referred found that the fair market value of the stock of the E. K. Wood Lumber Company was not in excess of fifty cents a share on the date of the decedent's death September 25, 1929. We think this valuation is abundantly supported by the evidence and have accordingly sustained the commissioner's finding in that regard. It follows, therefore, that plaintiff is entitled to recover and is hereby awarded a judgment against the United States in the sum of $23,253.94, with interest thereon according to law. It is so ordered.