297 So.2d 375

STATE of Alabama et al.

v.

**GREAT VALLEY LAND AND INVEST-
MENT COMPANY, an Alabama
Corporation.**

**Civ. 309, 309–A, 309–Bond, 309–C.**

Court of Civil Appeals of Alabama.

July 3, 1974.

William J. Baxley, Atty. Gen., Willard W. Livingston, Counsel, Dept. of Revenue, and Asst. Atty. Gen., Herbert I. Burson, Jr., Asst. Counsel, Dept. of Revenue, and Asst. Atty. Gen., for the State.

**50**

Edwin L. Brobston, Clifford W. Hardy, Jr., Bessemer, for appellee.

BRADLEY, Judge.

Pursuant to Title 51, Section 25, Code of Alabama 1940, as Recompiled 1958, the State Revenue Department entered final assessments for corporate stock taxes against the Great Valley Land and Investment Company for the years 1968, 1969, 1970 and 1972. The four assessments were appealed to the Circuit Court of Jefferson County, Bessemer Division, where they were tried as one case. The court, sitting without a jury, heard the evidence ore tenus and rendered a judgment in favor of Great Valley Land and Investment Company. In its written opinion the trial court held in part as follows:

" . . . [T]he Court is satisfied that the fair and reasonable market value of said stock is determined by what money said stock would bring in the market place, the purchaser not being compelled to buy and the seller not being compelled to sell, and both having knowledge of all pertinent facts and the Court is of the opinion that the following formula best represents this value in this case inasmuch as this is a corporation whose assets consist primarily of real estate:

"Subtracting from the rent, expenses as salaries and wages, repairs, taxes, insurance premiums, legal accounting and management fees a figure is obtained which represents the net income figure.

"Net income figure is then multiplied at a percentage, which percentage is the return a prudent real estate investor would expect as a yield from a real estate investment for the subject year. The result is the capitalized value.

"To the capitalized value is added the other assets of prepaid insurance, mortgages (at current market discount rate for mortgages), stocks, savings and cash and whatever other assets the particular corporation may own, and this total gives the fair market value of the corporation.

"From this fair market value of the corporation is subtracted those exemptions found in Title 51 Section 2 of the Code of Alabama as recompiled 1958 and the remainder is the value for the stock assessment."

The trial court also concluded that the residue for stock assessment against appellee in the tax year 1968 was $2,477.00; for the tax year 1969, $0.00; for the tax year 1970, $7,309.00; and for the tax year 1972, the residue was to be ascertained by the formula set out in the opinion.

From this judgment, the State Revenue Department has appealed to this court contending in essence that the trial court used an improper method for determining the fair and reasonable market value of the shares of stock of appellee corporation thereby arriving at an incorrect assessment for share taxes to be imposed against appellee.

Title 51, Section 25, *supra,* provides, in pertinent part, as follows:

"Every share of any domestic corporation . . . shall be assessed and the taxes thereon collected in the county wherein such corporation has its home or chief office in the state, and shall be assessed at thirty percent of its value to the person in whose name such shares stand on the books of the corporation and not to the corporation. . . . Such corporations shall . . . make a tax return . . . to the department of revenue . . . of all taxable property, real and personal, situated in the state . . . and the department of revenue after passing on the value of the shares of the capital stock shall fix the value of all the shares of said corporation and shall take thirty percent thereof which shall be the assessed value of the shares of said corporation. . . . After the assessed value of all the shares has been passed on and determined the department of revenue shall deduct from the total value of such shares (a) the assessed value of the real and personal property of the corporation as shown by such tax return by the corporation or finally determined. . . . It being the meaning and intent of this section that the assessed value of all the shares of the corporation be fixed by the department of revenue and that there be deducted therefrom the correct assessed value of the real and personal property of the corporation when the same shall finally be determined. . . . If the aggregate assessed value of the shares does not exceed the aggregate assessed value of the real and personal property of the corporation, then no tax shall be demanded or collected on the shares. . . ."

██ The above quoted statute requires that the shares of corporate stock be assessed at its fair and reasonable market value. State v. West Point Mfg. Co., 236 Ala. 467, 183 So. 449. Further, this value is not to be determined from any one piece of evidence but from all the relevant facts. State v. West Point Mfg. Co., *supra.*

Fair market value of corporate stock for estate tax purposes was defined in Wood v. United States, 29 F.Supp. 853, 89 Ct.Cl. 442, as that price which one is willing to

**52**

sell to one who is willing to buy with both having reasonable knowledge of the facts.

In State Dept. of Revenue v. Birmingham Realty Co., 255 Ala. 269, 50 So.2d 760, the Supreme Court said that "market value" of corporate stock suggests a price standardized by a large number of transactions in the market place, and where there is an absence of such transactions or a very limited number, evidence of every factor constituting value is admissible to give it a market value in the sense that such term is primarily used. Further, the Supreme Court of Iowa, in First National Bank of Estherville v. City Council of Estherville, 136 Iowa 203, 112 N.W. 829, observed:

" . . . [I]n this view it is not possible that there should be any fixed or arbitrary standard for the ascertainment of values. So it is that in respect of any particular item, or class of items, of property, all those things which from any cause inhere in or attach to the same, and which contribute in any degree to its desirability, are always taken into account in arriving at a conclusion. Indeed, it is not conceivable that the question of value could be determined adequately in any other way. And from this it follows that in estimating the value of stock in a bank or other corporation every fact condition having effect to influence or control must be considered."

In Lucas v. Pembroke Water Co., 205 Va. 84, 135 S.E.2d 147, it was stated that some of the elements to be considered in arriving at fair value of corporate stock are market value, net asset value, investment value and earning capacity.

The evidence shows that appellee is a family owned domestic corporation organized in 1960 with its principal business the rental of real estate. It also bought and sold real estate with the majority of its holdings in downtown Bessemer, Alabama. The corporate dealings in real estate were for itself and not for anyone else. The area in which most of the corporate holdings are located has declined in value in recent years due to the construction of shopping centers on the periphery of the city. Since 1968 the corporation has disposed of sixty-five to seventy percent of its real estate holdings in downtown Bessemer.

As an example of the declining value of real estate in downtown Bessemer, a piece of property owned by appellee had been assessed by the Board of Equalization of Jefferson County for $33,000, making the total market value about $100,000 (the assessed value is thirty percent of market value in Jefferson County), in spite of protests that the property was over-valued. The property was sold in 1968 by voluntary sale for $27,000, thus confirming appellee's opinion as to market value of the property.

Appellee's expert appraiser testified that he used the income capitalization for proposed investment approach for determining the fair and reasonable market value of the capital stock of appellee corporation. He said that this method was one of several recognized modes of arriving at fair market value of property. He had not used other methods for they could not be adapted to this particular corporation. The stock of this corporation had not been sold so there could be no comparable sales nor was there any new construction with which to compare cost.

The income method was explained by the witness in this manner: The 1968 net income was derived by subtracting the net operating expense from the gross income. The amount of $127,650 resulting was capitalized at the 1968 going rate of nine and one-half percent. This gives a capitalized value of $345,000. All other assets were added to this figure, including the mortgages at seventy percent of their value to give a total corporation value of $444,225. The evidence revealed that at this particu-

lar time mortgages were being discounted by thirty percent of their value. In accordance with Section 25, *supra*, thirty percent of the total corporate value of $345,000 gives the tax base of $133,267. From the tax base of $133,267, the real estate property assessment of $127,650 is then subtracted, as directed also by Section 25, to give the taxable residue of $5,617. This method was also followed by appellee in arriving at the tax residue for the years 1969, 1970 and 1972.

The State's appraiser testified that he used a method of evaluating appellee's corporate value for share tax purposes based on the latest figures obtained from the Board of Equalization of Jefferson County after assessing the real property in said county. He testified that this was the procedure that had been used by the department for many years.

In explaining the department's method to the trial court, the witness stated that for the year 1968 he took the real estate assessment of $127,650, which was thirty percent of the fair market value, or $425,500; and, from this figure of $425,500, he subtracted the balance sheet figures of $120,272 for land and $106,889 for buildings minus depreciation, to give a deficiency of real estate in the amount of $198,340.

The valuation of the shares of stock of the corporation was then determined to be $513,612. This figure was arrived at by taking the total assets from the balance sheet and adding to this the deficiency in real estate of $198,340 and the $10,000 of dividends payable. Thus we have a total value of $513,612.

In accordance with Section 25, *supra*, the thirty percent rate was then applied to this and the resulting figure was $154,080. From this figure the State subtracted the ad valorem assessments, both personal and real, and obtained a residue of $23,930.

The State's witness said that he arrived at fair market value for tax purposes generally by taking the assets and subtracting therefrom the liabilities. In the instant case this general approach was taken with the exception that the assessed value of the real property was used as the starting point for a determination of the assets of the corporation.

■ The primary question before this Court appears to be whether the trial court's judgment fixing the fair market value of appellee's corporate stock for share tax purposes is sufficiently supported by the evidence. We conclude that it is. This corporation's stock situation demands that emphasis be placed upon that mode of determining the fair market value that best considers all relevant factors rather than placing such heavy emphasis on the assessed value of the real estate.

The secondary issue has to do with the method used by appellee and adopted by the trial court in arriving at fair market value. The income capitalization for proposed investment approach was used by this particular corporation because it appeared to be the one most applicable to it in arriving at the fair and reasonable market value of its shares of stock. This method is one of several recognized methods used in determining the fair and reasonable market value of shares of corporate stock. The evidence adduced in the instant case supports the applicability of this particular method due mainly to the lack of sales of this corporation's shares of stock. Its stock had not been bought and sold so as to give it a market price on which to base fair market value; hence all factors giving rise to market value had to be considered.

The State, in reply, argues that its method has been used by the Department of Revenue for many years and should be the only acceptable mode of arriving at fair market value for share tax purposes. This particular method is not supported by any statute or regulation, just long usage, amounting, so it is contended, to policy of the department.

**54**

The use of one particular mode in determining the fair value in every situation overlooks the fact that every corporation has peculiar attributes, i. e., location, size, purpose, age, ownership, etc., which must be considered. To slavishly use such a formula in every case amounts to a conclusion that assessed value is always the same as market value, and we do not believe that this can be true in every case. In State v. Griffith, 292 Ala. 123, 290 So. 2d 162, a condemnation case, the Alabama Supreme Court concluded that evidence of an ad valorem tax assessment is not admissible to show or establish fair market value of real property, and one of the reasons given for the validity of such a rule is the lack of opportunity to cross-examine the people who participated in the establishment of such value.

Although the instant proceeding is not a condemnation case, the ascertainment of fair market value is still its primary objective and we believe the reasons for its determination here to be no less persuasive than in a condemnation matter. Therefore, we conclude that the trial court was not required to accept categorically the State's method of arriving at market value for the corporate stock of appellee corporation.

We would also point out that the ascertainment of market value of property is a factual matter, State v. West Point Mfg. Co., *supra*, and where the trial court sits without a jury, its decision is entitled to the weight of a jury verdict and is entitled to be confirmed absent a showing that the verdict is contrary to the great preponderance of the evidence. Dixie Auto Ins. Co. v. Lee, 288 Ala. 185, 258 So.2d 892. We cannot say that the evidence in the case at bar preponderates against the trial court's ruling, and, therefore, the judgment is due to be affirmed.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.