YATES, Judge.
This is the second time this ad valorem tax case has been before this court. See Lake Forest Property Owners Ass’n v. Baldwin County, 587 So.2d 393 (Ala.Civ.App.1991) (Lake Forest I). That first appeal by Lake Forest Property Owners Association, Inc. (LFPOA), centered around a single, disposi-tive issue concerning the assessment of common areas for ad valorem tax purposes. Specifically, Lake Forest maintained that *606 this court should determine when it is permissible to (a) reduce the value of real property because of encumbrances, (b) ascribe the value of a servient interest to the dominant estate that it serves, and/or (c) consider an entire residential development as a whole for purposes of determining fair and equitable ad valorem taxation.
We acknowledged the peculiar problems that are presented when encumbered property is assessed for tax purposes, noting that “[T]he property in question, the common areas, are ... encumbered due to the fact that each property owner in Lake Forest was granted an express easement for recreation, ingress and egress, lateral support, and vehicular parking as to the common areas.” Lake Forest I at 394.
On remand, the trial court was instructed to consider the mandate of Ala.Code 1975, § 40-7-15, which provides that “for the purpose of assessment, real ... property shall be assessed at its fair market value.” In assessing the common areas, the board was required to take into account the value of the easement (encumbrance) that the individual property owners possess as to the amenities. This court recognized, however, that “The encumbrance [was only] one factor among many the assessor must consider in determining the just value of the [amenities] to be taxed.” Lake Forest I at 394 (citation omitted) (emphasis added).
Following remand, the trial court heard additional evidence. The trial court made findings of fact and entered conclusions of tew, in compliance with our instructions. Having done so, it once again ruled in favor of the board of equalization. This appeal followed, with Lake Forest again claiming that the trial court erred.
In accordance with Ala.Code 1975, § 40-3-25, the tax assessor’s value is taken as prima facie correct, and the burden is on the taxpayer to show through competent evidence that the tax assessor’s appraisal is incorrect. See Penney v. State, 229 Ala. 36, 155 So. 576 (1934).
Based on this court’s standard of review, and the fact that the trial court complied with our instructions on remand, we affirm. In affirming, we adopt the well-reasoned July 29, 1992, order of the trial court as our own:
“1. Lake Forest Subdivision is composed of 3,386 developed lots and 837 undeveloped lots.
“2. A monthly assessment fee of $27.50 is paid by each lot owner toward the maintenance and upkeep of the amenities, which include a golf course, a marina, tennis courts, pools and a restaurant; except, however, no assessments are paid for the 837 undeveloped lots which are owned by the original developer.
“3. Generally, expenses of operation of the amenities exceed the revenues derived therefrom and the monthly maintenance fee is applied toward the deficit.
“4. Based upon financial statements of Lake Forest Property Owners Association, Inc. for fiscal year ending January 31, 1992, the following net losses were attributable to each amenity: Golf (— $562,-707.25), Marina ( — $250,799.43), tennis (-$36,354.45), pool (-$66,498.21), food/beverage (- $347,294.85).
“5. According to the testimony at trial, the average range of values of lots in Lake Forest is between $6,500 and $10,500, except for golf course lots and lake front lots which range in average value from $18,000 to $45,000, depending upon varying circumstances.
“6. The tax assessor valued the amenities in Lake Forest at $7,000 per acre for tend, based upon the market approach, that is, comparable sales of tend similarly situated. The cost approach was used for valuing improvements.
“7. LFPOA’s experts contend that the value of the amenities is reflected in an increased value of the individual lots and that to tax the amenities separately amounts to double taxation.
“8. Ownership of the amenities is held in the name of LFPOA, a non-profit corporation.
“9. Board experts testified that lots in Lake Forest generally sell for about $4,000 less than comparable lots outside Lake Forest.
*607 “10. LFPOA is depreciating its improvements based upon an approximate value of $8,000,000.
“11. The tax assessor for Baldwin County valued the amenities at $6,031,000 for 1991. LFPOA does not disagree with this valuation.
“WHEREFORE, based upon the premises it is hereby decreed that:
“(a) The evidence as presented to this Court does not support the contention of LFPOA that the value of the amenities is reflected in the lots of Lake Forest Subdivision;
“(b) The value of the encumbrances, i.e. the right to use the amenities by the property owners, does not decrease the value of the amenities;
“(c) LFPOA has not been denied equal protection and due process of law;
“(d) The valuation by the Board is not excessive, arbitrary or unreasonable;
“(e) The Court finds in favor of [the board] and costs are taxed to [LFPOA].” The judgment of the circuit court is hereby affirmed.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, J., concur.