44 So.3d 491 (2009)
GORDON, DANA, STILL, KNIGHT & GILMORE, LLC, as successor to Gordon & Associates, LLC
v.
JEFFERSON COUNTY.
2071028.
Court of Civil Appeals of Alabama.
June 26, 2009.
Rehearing Denied December 4, 2009.
*492 John G. Dana of Gordon, Dana, Still, Knight & Gilmore, L.L.C., Birmingham, for appellant.
Carl S. Burkhalter and Gregg M. McCormick of Maynard, Cooper & Gale PC, Birmingham; and Charles Wagner and Theo Lawson, Birmingham, for appellee Jefferson County.
Keith Maddox, asst. counsel, Alabama Department of Revenue, for appellee State of Alabama Department of Revenue.
BRYAN, Judge.
The law firm of Gordon, Dana, Still, Knight & Gilmore, LLC ("Gordon"), as successor to Gordon & Associates, LLC, appeals a judgment of the Jefferson Circuit Court affirming the tax assessment of Gordon's personal property for the years 2003 through 2007 by the Jefferson County *493 Tax Assessor ("the tax assessor"). We affirm.
The circuit court's judgment recites the procedural history and material facts:
"This case is the taxpayer's appeal from personal property tax assessments for the years 2003 through 2007. It was heard at bench trial on June 2 and 3, 2008, and the parties have submitted post-trial documents to the court.
"The Birmingham law firm of Gordon, Dana, Still, Knight & Gilmore, LLC (Gordon), filed an appeal from the personal property tax assessment rendered by the Jefferson County Tax Assessor for tax years 2003 through 2007. Gordon filed personal property tax returns for those years without itemizing each article of personal property, but listed it in three categories: furniture, computers, and equipment, assigning a total cost for each category. The total cost assigned to each category was the opinion of Bruce Gordon, the firm's managing partner.
"Gordon takes issue with the use of the mass appraisal grid system found in the State of Alabama Personal Property Appraisal Manual. In [its] opinion, the true fair market value of the personal property is far less than the value assigned on the grid employed by the Tax Assessor.
"The assessed value calculated by the Tax Assessor for Gordon's personal property for tax years 2003 through 2006 was $15,945 and the assessed value for tax year 2007 calculated by the Tax Assessor is $13,419. Thus, the total assessed value of Gordon's personal property for tax years 2003 through 2007 is $29,364. The tax bill due and owing from the taxpayer Gordon in this case is $2,202.30.
"The Tax Assessor conducted two appeal hearings as required by the Alabama Code, but the testimony shows that they accomplished nothing. Gordon produced no documentary evidence at the hearings to support [its] claims, other than information addressing the cost of the property, and the Tax Assessor did not alter the assessed value of Gordon's personal property after either hearing. If the hearings had any effect, it was to polarize the parties' positions.
"At the bench trial, Gordon presented testimony from several highly regarded experts who opined that the fair market value of the personal property owned by Gordon was less than the assessed value assigned by the Jefferson County Tax Assessor. Russell Christie, who conducted an on-site audit of Gordon's office for the Tax Assessor, employed the grid contained in the State of Alabama Personal Property Appraisal Manual in assigning fair market value to each item of Gordon's personal property. It is that valuation which the Tax Assessor applied to Gordon's personal property.
"[J. Wray Pearce], a C.P.A. who testified on behalf of the taxpayer, criticized the use of the grid method of mass appraisal for personal property in the State of Alabama, indicating that it does not achieve a valuation based on the true fair market value of the items, as required by the statute.
"Several Alabama cases have addressed issues concerning appeals from assessments. On appeal to Circuit Court, the Tax Assessor's assessment is deemed to be prima facie correct and the burden is on the taxpayer to produce competent evidence that the assessment is incorrect. Lake Forest Property Owners Assn., Inc. v. Baldwin County Board of Equalization, 659 So.2d 605 (Ala.Civ.App.1994). Similarly, determinations as to the valuation made by the State Department of Revenue are *494 deemed to be prima facie correct and the burden is on the taxpayer to prove that the assessment is incorrect. Turner v. State Department of Revenue, 643 So.2d 568 (Ala.1994), and Rutledge Petroleum Corp. v. F & W Trucking, et al., 545 So.2d 60 (Ala.Civ.App.1988).
"It is the duty of each Tax Assessor of the State of Alabama to assess every taxpayer's real and business personal property by October 1 of each year. Code of Alabama (1975), § 40-7-1 and § 40-7-2. It is the duty of every taxpayer to submit a list of all real and business personal property owned as of October 1 each year, under oath, to the County Tax Assessor. Code of Alabama (1975), § 40-7-4. The taxpayer is further required to sign an oath certifying that he is making a full and complete return of all property owned as of tax day which is listed on his return. Code of Alabama (1975), § 40-7-8. The County Tax Assessor has full authority to audit, examine and inspect any and all records and property of the taxpayer in order to enforce the provisions of Title 40 of the Code of Alabama, and if the taxpayer fails or refuses to cooperate and provide a detailed listing of its property, he or she can be found guilty of a Class C misdemeanor. Code of Alabama (1975), § 40-7-21. The Alabama Code vests broad discretion in the tax assessor in reaching the assessed value of itemized articles of personal property, `except as otherwise provided by law, the Assessor shall, from information entered on the tax return list and from all other information known to him, or which he may procure, proceed to ascertain what, in his judgment, is a fair and reasonable market value of each item of property returned by or listed to any taxpayer.' Code of Alabama (1975), § 40-7-25. The taxpayer has the right to appeal the final assessment rendered by the Tax Assessor to Circuit Court. Code of Alabama (1975), § 40-7-45.
"Clearly the tax assessor cannot give an individual appraisal of every item of personal property used in every business in Jefferson County which is subject to taxation. Such an effort would likely cost more than the tax collected. Thus, the states have established systems for ascertaining the fair market value of personal property. The system works very well in Alabama and in other states, and this court concludes that the existing method provides a workable and practical way to tax personal property. The method is applied across the board to all taxpayers. The Gordon firm has not been discriminated against.
"Upon consideration of the evidence and the law, the Court finds that the plaintiff did not carry its burden in support of its contention that the fair market value assessed by the Tax Assessor was inaccurate or invalid. The Tax Assessor followed and complied with the statutory procedures governing the assessment of escape taxes. See § 40-7-23(d), `the assessing official shall give notice of an escape assessment by certified or registered mail, ... to the agent or attorney of such owner, notifying such person to appear before the assessing official in person, or by agent or attorney, ... if there is an objection to the assessment ... if on the date set for hearing such objection the person against whom the assessment is made fails to appear or if in the opinion of the assessing official the assessment should not be changed and the assessment is proper, then the assessing official shall make the assessment final.'
"The discretion vested in Alabama Tax Assessors was discussed at length in the case styled Howell v. Malone, 388 So.2d 908 (Ala.1980). That case dealt *495 with the classification of real property for assessment purposes, but the broader discussion of the Tax Assessor's interpretive discretion is equally applicable to the case at bar. The Court held that although neither the Constitution nor the Legislature vested absolute discretion in the Assessor, it did instill in them `interpretive discretion.' 388 So.2d at 915. Specifically, the Supreme court approved the interpretations made by the various Tax Assessors of the State in defining the meaning of `single family owner occupied residential property.' If the Tax Assessors can apply discretion in interpreting the terms used in the various sections of Title 40 relating to real property, it follows that they have the same interpretive discretion with respect to the provisions of Title 40 applicable to business personal property.
"In the instant case, Tax Assessor Dan Weinrib declined to exercise his discretion and followed the State Appraisal Manual in arriving at a fair market value of Gordon's business personal property. It has not been shown that the exercise of that discretion is arbitrary or capricious, but instead, it is reasonable and well-founded upon appraisal rules and regulations.
"The Tax Assessor testified that in all assessments of personal property it follows the State Appraisal Manual, which contains a grid that applies to the cost data provided by the taxpayer to determine the current fair market value of each item of personal property. Although the appraisal manual is a guide to the determination of fair market value of items of personal property, there must be good reason for the Tax Assessor to depart from the application of the procedures and format for mass appraisals set forth in the manual.
"As the deposition testimony of State Revenue Department Division Head, Will Martin, indicated, there must be some extraordinary reason to depart from the dictates of the manual, including the grid or table therein for fixing fair market value of personal property. The Court finds that there was no substantial reason to depart from the procedures set forth in the manual in this case.
"As stated in the preface to the Appraisal Manual, `The purpose of this manual is to establish basic methods and procedures to be used in the Alabama personal property appraisal process, and to insure statewide property appraisal equity by serving as a reference manual to all Alabama assessing and appraising personnel.' Further, it is stated on page 1 that the purpose of the manual is as follows, `This manual is published for the purpose of implementing the procedures, requirements, programs, and policies of the Department of Revenue to appraise, value, and equalize business personal property assessments in Alabama.' And, tax assessing officials are doing a step by step guide to the valuation process, `These procedures should be used by the county taxing official and appraisal staff in order to assure equity and uniformity in valuing the many types of personal property. We have prepared these guidelines in an effort to help simplify the complex problems that are presented by the appraisal of personal property.' Importantly, Section VII(B)(2), directs the assessor to `use the grid valuation section of the worksheet to arrive at the market value of personal property whenever a grid is applicable.' In fact, there is a section in the Appraisal Manual applicable to the assessment of personal property ordinarily found in the offices of attorneys. (Appraisal Manual at p. 2-3) The economic life of these items is set at ten *496 years according to the Appraisal Manual.
"In summary, it is undisputed that the Tax Assessor applied the grid applicable to attorney offices contained in the Appraisal Manual. Whether this grid method of mass appraisal is always an accurate reflection of fair market value is not for the Court to decide in this appeal. This case is limited to the returns in question and upon which this case was tried. Notwithstanding this limitation, the Court expressly finds that the use of the Appraisal Manual for the plaintiff's personal property in this case was appropriate and that there were not extenuating or unusual circumstances to dictate departure from the use of the appropriate attorney personal grid contained in said Manual.
"It is hereby ORDERED, ADJUDGED, and DECREED that the defendant Tax Assessor's assessment of plaintiff's business personal property is AFFIRMED."
Following the circuit court's entry of its judgment, Gordon timely appealed to this court. We transferred the appeal to the supreme court due to lack of jurisdiction, and the supreme court transferred the appeal back to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Because the circuit court received evidence ore tenus, our review of its judgment is governed by the following principles:
"`"`[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.'"' Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala. 2002)). `"The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment."' Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). `Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts.' Waltman v. Rowell, 913 So.2d at 1086."
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007).
Gordon argues that the trial court erred in affirming the tax assessor's assessment because, Gordon says, (1) §§ 40-7-25 and 40-7-62, Ala.Code 1975, require the tax assessor to assess each item of personal property at its "fair market value" and (2) the Alabama courts have defined "fair market value" as "the sum arrived at by fair negotiation between an owner willing to sell and a purchaser willing to buy, neither being under pressure to do so." However, § 40-7-25, as it was worded before September 1, 2007, actually stated that a tax assessor "shall, from information entered on the tax return list and from all other information known to him, or which he may procure, proceed to ascertain what, in his best judgment, is a fair and reasonable market value of each item of property returned by or listed to any taxpayer ...." (Emphasis added.)[1] *497 Our supreme court has held that when construing the language of a statute, this court must presume "`that every word, sentence, or provision was intended for some useful purpose, has some force and effect, and that some effect is to be given to each, and also that no superfluous words or provisions were used.'" Ex parte Uniroyal Tire Co., 779 So.2d 227, 236 (Ala. 2000) (quoting Sheffield v. State, 708 So.2d 899, 909 (Ala.Crim.App.1997)). The definition of fair market value indicates that the actual fair market value of an item of property can only be ascertained if the owner willingly offers it for sale and reaches an agreement on a price with a willing buyer. However, the legislature's inclusion of the words "in his best judgment" and "reasonable" in § 40-7-25 indicates that the legislature intended to require that tax assessors estimate a reasonable fair market valuethe legislature did not intend to require tax assessors to determine the actual fair market value. Therefore, there is no merit to Gordon's argument that the circuit court erred on the ground that the relevant statutes required the tax assessor to determine the actual fair market value of Gordon's property.
Gordon also argues that the circuit court erred in affirming the tax assessor's assessment because, Gordon says, it introduced (1) the testimony of expert witnesses who gave their opinions regarding the fair market value of Gordon's property that conflicted with the values assigned to that property by the tax assessor and (2) the testimony of expert witnesses who testified that the grid system used by the tax assessor did not bear a rational relationship to fair market value. However, the wording of § 40-7-25 indicates that the legislature intended to accord tax assessors discretion in the methodology and information they use in estimating reasonable fair market value for taxpayers' property. In the case now before us, the circuit court, despite the testimony of Gordon's expert witnesses, found that the tax assessor's use of the grid system was appropriate. As this court has stated:
"In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility of witnesses, and the trial court should accept only that testimony it considers to be worthy of belief. Ostrander v. Ostrander, 517 So.2d 3 (Ala. Civ.App.1987). Further, in determining the weight to be accorded to the testimony of any witness, the trial court may consider the demeanor of the witness and the witness's apparent candor or evasiveness. Ostrander, supra.... It is not the province of this court to override the trial court's observations. Brown [v. Brown, 586 So.2d 919 (Ala. Civ.App.1991)]."
Woods v. Woods, 653 So.2d 312, 314 (Ala. Civ.App.1994). Given the applicability of the ore tenus rule, we cannot hold that the circuit court erred in finding that the tax assessor's use of the grid system was appropriate despite the testimony of Gordon's expert witnesses.
The dissenting opinion states that "[n]owhere in its final judgment does the trial court state that the composite-factor method satisfactorily approximates fair market value." 44 So.3d at 502 (Moore, J., dissenting) We disagree. The circuit court implicitly held that the composite-factor method satisfactorily approximated fair market value when it stated that "the Court expressly finds that the use of the Appraisal Manual for the plaintiff's personal property in this case was appropriate and that there were not extenuating or unusual circumstances to dictate departure *498 from the use of the appropriate attorney personal grid contained in said Manual."
Accordingly, for the reasons discussed above, we affirm the judgment of the circuit court.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, J., concur.
MOORE, J., dissents, with writing, in which THOMAS, J., joins.
MOORE, Judge, dissenting.
In this case, Gordon, Dana, Still, Knight & Gilmore, LLC, as the successor of Gordon & Associates, LLC ("the taxpayer"), appeals from a judgment entered by the Jefferson Circuit Court ("the trial court") affirming two assessments of business personal-property ad valorem taxes covering the tax years 2003 through 2006 and 2007, respectively. The majority affirms the judgment. Because I believe the trial court failed to adjudicate the key issue before it, I respectfully dissent.
The evidence at trial showed that the taxpayer filed business-personal-property tax returns on an annual basis between 2003 and 2007.[2] Each year, Bruce Gordon, the managing member for the taxpayer, indicated on the face of the return his estimation of the fair market value of the taxpayer's personal property[3] and the taxpayer remitted its personal-property taxes based on that estimation. The tax assessor later audited the taxpayer. Based on a valuation system set out in the Alabama Personal Property Appraisal Manual ("the manual"), which I refer to as the "composite-factor method," the auditor determined that the taxpayer had undervalued its personal property considerably. The tax assessor assessed an additional ad valorem tax for the tax years 2003 through 2006 and for the tax year 2007, totaling $2,202.30. The taxpayer objected to the valuation by the tax assessor. At two informal meetings, the taxpayer questioned the valuation methodology employed by the tax assessor and insisted that Gordon's estimation of the fair market value of the personal property was accurate. The tax assessor disagreed and made its assessments final. The taxpayer then appealed the final assessments to the trial court.[4]
At trial, the taxpayer introduced the deposition of Will Martin, the valuation and standards supervisor with the Property Tax Division of the Alabama Department of Revenue ("the Department"). Martin testified that an appraiser working for a county tax assessor should determine the fair market value of personal property for the purpose of assessing ad valorem taxes on the personal property. Martin said that the manual, which is produced by the Department, sets out guidelines to determine fair market value. Those guidelines generally require the appraiser to use the composite-factor method. Simply put, the composite-factor method determines the value of personal property by multiplying *499 the original purchase price paid by the taxpayer by an amalgam of depreciation and inflation factors based on the age of the personal property in relation to its overall economic life. Martin further testified, as did Steven Hollis, the chief personal-property tax appraiser for Jefferson County, that, unless some unusual or extraordinary reason exists, the appraiser should not deviate from the composite-factor method.
Gordon, an experienced tax attorney, and J. Wray Pearce, a certified public accountant, both testified that, in their expert opinions, the composite-factor method used by the tax assessor does not compute the fair market value of personal property. Gordon and Pearce disputed the basic assumptions used in the composite-factor method as to the economic life of personal property and its depreciation rate. They testified that the composite-factor method uses unrealistic figures that inflate the value of personal property and do not reflect its true fair market value. The taxpayer's three other expert witnesses issued reports detailing the value of the taxpayer's personal property based primarily on a different valuation approach known as the market, or sales, approach, but also based on a methodology similar to that used by the tax assessor, except using different economic-life and depreciation-rate figures. They all testified that their reports, which showed lower values than those used by the tax assessor, accurately indicated the fair market value of the taxpayer's personal property during the relevant tax years.
In its final judgment, the trial court determined from the evidence that the Department and the tax assessor had adopted a "workable and practical" method for appraising personal property for ad valorem tax purposes. The trial court concluded that the tax assessor had "declined to exercise his discretion and followed [the manual] in arriving at a fair market value of [the taxpayer's] business personal property." The trial court stated that the taxpayer had not "shown that the exercise of that discretion is arbitrary or capricious, but instead, it is reasonable and well-founded upon appraisal rules and regulations." Specifically, the trial court determined that the taxpayer had failed to show "good reason for the [t]ax [a]ssessor to depart from the application of the procedures and format for mass appraisals set forth in the manual." The trial court then affirmed the two final assessments, stating:
"In summary, it is undisputed that the [t]ax [a]ssessor applied the grid applicable to attorney offices contained in the [manual]. Whether this grid method of mass appraisal is always an accurate reflection of fair market value is not for the Court to decide in this appeal. This case is limited to the returns in question and upon which this case was tried. Notwithstanding this limitation, the Court expressly finds that the use of the [manual] for the plaintiff's personal property in this case was appropriate and that there were not extenuating or unusual circumstances to dictate departure from the use of the appropriate attorney personal grid contained in [the manual]."
On appeal, the taxpayer makes various arguments as to why the judgment of the trial court should be reversed. I find that the dispositive issue concerns the trial court's failure to determine whether the tax assessor correctly ascertained the fair market value of the taxpayer's personal property.
Section 40-7-25, Ala.Code 1975, as it was worded before September 1, 2007, provided, in pertinent part:
"Except as otherwise provided by law, the assessor shall, from information entered *500 on the tax return list and from all other information known to him, or which he may procure, proceed to ascertain what, in his best judgment, is a fair and reasonable market value of each item of property returned by or listed to any taxpayer ...."[5]
Section 40-7-62, Ala.Code 1975, further provides:
"Each county governing body of this state, through its respective tax assessor, shall have the property of such county appraised at its fair and reasonable market value, which fair and reasonable market value shall be the basis of assessments for ad valorem taxes."
The plain language of those two statutes makes it clear that ad valorem taxes on personal property may be based only on the "fair and reasonable market value" of that personal property. See IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992) (holding that courts must give effect to plain and unambiguous language in statute).
The term "fair and reasonable market value" is a term of art in the area of Alabama ad valorem tax law. See Ala. Const.1901, Art. XI, § 217(b) (generally requiring taxable property to be assessed for ad valorem tax purposes based on a percentage of its "fair and reasonable market value"). Our supreme court has long treated that term as synonymous with "fair market value." See Bynum Bros. v. State, 216 Ala. 102, 104-05, 112 So. 348, 350 (1927). "Fair market value" is "that price which one is willing to sell to one who is willing to buy with both having reasonable knowledge of the facts." State v. Great Valley Land & Inv. Co., 53 Ala. App. 49, 51-52, 297 So.2d 375, 377 (Civ. 1974) (citing Wood v. United States, 89 Ct.Cl. 442, 29 F.Supp. 853 (1939)); see also Mt. Carmel Estates, Inc. v. Regions Bank, 853 So.2d 160, 166 (Ala.2002) (quoting Barnard v. First Nat'l Bank of Okaloosa County, 482 So.2d 534, 536 (Fla.Dist.Ct. App.1986), quoting in turn Flagship Bank of Orlando v. Bryan, 384 So.2d 1323 (Fla. Dist.Ct.App.1980)); and Ex parte Barron Servs., Inc., 874 So.2d 545, 550 n. 6 (Ala. 2003) (quoting Black's Law Dictionary 597 (6th ed.1990)) (defining "fair market value" as "`[t]he amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts'").[6]
Although § 40-7-25 appears to give county tax assessors discretion on how to determine fair market value, at least two other later-enacted statutes clarify that county tax assessors must follow the valuation methodologies established by the Department. See Ala.Code 1975, §§ 40-7-61 ("The Department of Revenue shall prescribe procedures and shall set standards for the work to be done under this [reappraisal] program."), and 40-7-64 ("The Department of Revenue shall prescribe for the counties the procedures to be followed, standards to be met, forms to be used, records to be kept and progress reports to be filed."); see also Ex parte Lawley, 636 So.2d 474 (Ala.Civ.App.1994) (noting that Ala.Code 1975, § 40-2-11(1), gives the Department general and complete supervision of fair market valuation for taxation purposes). The Department certainly would have some discretion in adopting valuation methods, but its discretion is statutorily limited to using only such methods that derive fair market value. If the Department adopts a methodology from *501 which fair market value may not be derived, the Department would run afoul of §§ 40-7-25 and 40-7-62 and its methodology would be unlawful.
Pursuant to its statutory authority to regulate the valuation methodologies for ad valorem tax purposes, the Department promulgated Ala. Admin. Code, Rule 810-4-1-.04, which provides, in pertinent part, that "[t]he market value of all tangible personal property will be determined by using the procedures set forth in the [the manual], as it may be amended from time to time." Rule 810-4-1-.01(1)(a). The manual provides that appraisers generally should use the composite-factor method to determine fair market value, but the manual also states: "The manual is a guide in the appraisal of personal property and is not all inclusive. Any other guides or sources of information that provide fair market values of personal property may be used in addition to the manual." Notably, the manual does not state that the taxpayer must present unusual or extraordinary reasons to justify departure from the composite-factor method.
In this case, the taxpayer appealed from two final assessments. In an appeal from a final assessment of personal-property ad valorem taxes, the appeal "shall be tried as other cases appealed to the circuit court from the board of equalization." Ala.Code 1975, § 40-7-23(d). In appeals from rulings of the board of equalization,
"[i]f from all the evidence the court is of the opinion that the valuation is either too high or too low, it shall render a judgment fixing such valuation as it may deem fit.... It shall decide all questions as to the legality of the assessment and the valuation of the property...."
Ala.Code 1975, § 40-3-25. Construing similar language in an income-tax case, our supreme court determined that § 40-3-25 contemplated a de novo proceeding before the trial court. See State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342 (1943); see also State v. Pollock, 251 Ala. 603, 38 So.2d 870 (1948). Thus, it is the duty of a trial court, in hearing an appeal from a final assessment like the ones in this case, to decide for itself, based on all the evidence before it, the value of the personal property. See Monroe Bond & Mortgage Co. v. State ex rel. Hybart, 254 Ala. 278, 48 So.2d 431 (1950) (construing predecessor to § 40-7-25 as authorizing county tax assessors to consider any and all information concerning value of property). In making that decision, the trial court should consider the assessment to be prima facie correct. See Ala.Code 1975, § 40-3-25. The burden rests on the taxpayer to produce competent evidence to show that the assessment is incorrect. See Lake Forest Prop. Owners Ass'n, Inc. v. Baldwin County Bd. of Equalization, 659 So.2d 605 (Ala.Civ.App. 1994). It appears that whether a taxpayer has proven that the method used by a tax assessor has yielded an incorrect valuation of its property and, thus, an incorrect assessment is a question of fact to be decided by the trial court. See id.
In this case, the trial court decided that the method adopted by the Department and used by the tax assessor is "workable and practical." However, that was not the issue before it. The pertinent inquiry was whether the composite-factor method yields a correct fair market value. No matter how convenient in may be to apply the composite-factor method, if the fair market value of the personal property cannot be derived from that method, as a matter of law, it may not be used. The trial court also decided that the taxpayer had not met its burden of proving an extraordinary reason for deviating from the composite-factor method. Again, the burden is not on the taxpayer to prove anything *502 other than that the value assigned by the tax assessor incorrectly states the fair market value of the taxpayer's personal property. Regardless of Martin's and Hollis's testimony, the taxpayer has no burden under the law, or even under the manual, to prove some extraordinary situation exists to compel deviation from the composite-factor method.
In its final judgment, the trial court did not make any finding regarding the main issue litigated by the partieswhether the composite-factor method used by the tax assessor produced the correct fair market value of the personal property of the taxpayer. Nowhere in its final judgment does the trial court state that the composite-factor method satisfactorily approximates fair market value. Additionally, viewing the entirety of the judgment in context, I cannot agree with the majority that the trial court made any such implied finding. The trial court did not determine the fair market value of the personal property at issue using any method, much less the composite-factor method. The trial court did not find that the auditor in this case had accurately computed fair market value. By placing the burden on the taxpayer, the trial court also did not find that the taxpayer had failed to prove that the tax assessor's valuation was incorrect.
In its appeal, the taxpayer argues that the trial court erred in affirming the assessments based solely on its finding that the composite-factor method is a convenient way of appraising personal property. I agree. I would reverse the judgment of the trial court and remand the cause for the trial court to make findings regarding the correctness of the tax assessor's valuation of the taxpayer's personal property. I would instruct the trial court, in rendering its new judgment, to decide whether the composite-factor method used by the assessor accurately estimates the fair market value of the taxpayer's personal property. If not, the trial court should determine the fair market value of the taxpayer's personal property based on all the evidence before it, without regard to the composite-factor method, and adjust the tax liability of the taxpayer accordingly.
THOMAS, J., concurs.
NOTES
[1] Section 40-7-25 was amended effective September 1, 2007. The amendments were technical and did not effect a substantive change to the language of the statute quoted above. In its judgment, the circuit court quoted that statute as it existed before it was amended.
[2] The taxpayer also filed a business-personal-property tax return for 2002, but it was not assessed any additional taxes for that year; thus, I limit my discussion only to the years 2003 through 2007.
[3] Although Ala.Code 1975, § 40-7-14, requires a taxpayer to state its "estimated value of every item of personal property listed" on the return, the form used by the tax assessor, for some unstated reason, does not contain a line or space for inputting that information.
[4] The taxpayer actually appealed the final assessment as to the tax years 2003 through 2006. That appeal remained pending when the tax assessor made a final assessment for the tax year 2007. The taxpayer then amended its appeal to include the 2007 final assessment.
[5] See note 1 in the main opinion.
[6] The manual uses a similar definition for "market value."