MOORE, Judge,
dissenting.
In this case, Gordon, Dana, Still, Knight & Gilmore, LLC, as the successor of Gordon & Associates, LLC (“the taxpayer”), appeals from a judgment entered by the Jefferson Circuit Court (“the trial court”) affirming two assessments of business personal-property ad valorem taxes covering the tax years 2003 through 2006 and 2007, respectively. The majority affirms the judgment. Because I believe the trial court failed to adjudicate the key issue before it, I respectfully dissent.
The evidence at trial showed that the taxpayer filed business-personal-property tax returns on an annual basis between 2008 and 2007.[2] Each year, Bruce Gordon, the managing member for the taxpayer, indicated on the face of the return his estimation of the fair market value of the taxpayer’s personal property[3] and the taxpayer remitted its personal-property taxes based on that estimation. The tax assessor later audited the taxpayer. Based on a valuation system set out in the Alabama Personal Property Appraisal Manual (“the manual”), which I refer to as the “composite-factor method,” the auditor determined that the taxpayer had undervalued its personal property considerably. The tax assessor assessed an additional ad valorem tax for the tax years 2003 through 2006 and for the tax year 2007, totaling $2,202.30. The taxpayer objected to the valuation by the tax assessor. At two informal meetings, the taxpayer questioned the valuation methodology employed by the tax assessor and insisted that Gordon’s estimation of the fair market value of the personal property was accurate. The tax assessor disagreed and made its assessments final. The taxpayer then appealed the final assessments to the trial court.[4]
At trial, the taxpayer introduced the deposition of Will Martin, the valuation and standards supervisor with the Property Tax Division of the Alabama Department of Revenue (“the Department”). Martin testified that an appraiser working for a county tax assessor should determine the fair market value of personal property for the purpose of assessing ad valorem taxes on the personal property. Martin said that the manual, which is produced by the Department, sets out guidelines to determine fair market value. Those guidelines generally require the appraiser to use the composite-factor method. Simply put, the composite-factor method determines the value of personal property by multiplying *499 the original purchase price paid by the taxpayer by an amalgam of depreciation and inflation factors based on the age of the personal property in relation to its overall economic life. Martin further testified, as did Steven Hollis, the chief personal-property tax appraiser for Jefferson County, that, unless some unusual or extraordinary reason exists, the appraiser should not deviate from the composite-factor method.
Gordon, an experienced tax attorney, and J. Wray Pearce, a certified public accountant, both testified that, in their expert opinions, the composite-factor method used by the tax assessor does not compute the fair market value of personal property. Gordon and Pearce disputed the basic assumptions used in the composite-factor method as to the economic life of personal property and its depreciation rate. They testified that the composite-factor method uses unrealistic figures that inflate the value of personal property and do not reflect its true fair market value. The taxpayer’s three other expert witnesses issued reports detailing the value of the taxpayer’s personal property based primarily on a different valuation approach known as the market, or sales, approach, but also based on a methodology similar to that used by the tax assessor, except using different economic-life and depreciation-rate figures. They all testified that their reports, which showed lower values than those used by the tax assessor, accurately indicated the fair market value of the taxpayer’s personal property during the relevant tax years.
In its final judgment, the trial court determined from the evidence that the Department and the tax assessor had adopted a “workable and practical” method for appraising personal property for ad valorem tax purposes. The trial court concluded that the tax assessor had “declined to exercise his discretion and followed [the manual] in arriving at a fair market value of [the taxpayer’s] business personal property.” The trial court stated that the taxpayer had not “shown that the exercise of that discretion is arbitrary or capricious, but instead, it is reasonable and well-founded upon appraisal rules and regulations.” Specifically, the trial court determined that the taxpayer had failed to show “good reason for the [t]ax [assessor to depart from the application of the procedures and format for mass appraisals set forth in the manual.” The trial court then affirmed the two final assessments, stating:
“In summary, it is undisputed that the [t]ax [a]ssessor applied the grid applicable to attorney offices contained in the [manual]. Whether this grid method of mass appraisal is always an accurate reflection of fair market value is not for the Court to decide in this appeal. This case is limited to the returns in question and upon which this case was tried. Notwithstanding this limitation, the Court expressly finds that the use of the [manual] for the plaintiffs personal property in this case was appropriate and that there were not extenuating or unusual circumstances to dictate departure from the use of the appropriate attorney personal grid contained in [the manual].”
On appeal, the taxpayer makes various arguments as to why the judgment of the trial court should be reversed. I find that the dispositive issue concerns the trial court’s failure to determine whether the tax assessor correctly ascertained the fair market value of the taxpayer’s personal property.
Section 40-7-25, Ala.Code 1975, as it was worded before September 1, 2007, provided, in pertinent part:
“Except as otherwise provided by law, the assessor shall, from information en *500 tered on the tax return list and from all other information known to him, or which he may procure, proceed to ascertain what, in his best judgment, is a fair and reasonable market value of each item of property returned by or listed to any taxpayer .[5]
Section 40-7-62, Ala.Code 1975, further provides:
“Each county governing body of this state, through its respective tax assessor, shall have the property of such county appraised at its fair and reasonable market value, which fair and reasonable market value shall be the basis of assessments for ad valorem taxes.”
The plain language of those two statutes makes it clear that ad valorem taxes on personal property may be based only on the “fair and reasonable market value” of that personal property. See IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992) (holding that courts must give effect to plain and unambiguous language in statute).
The term “fair and reasonable market value” is a term of art in the area of Alabama ad valorem tax law. See Ala. Const.1901, Art. XI, § 217(b) (generally requiring taxable property to be assessed for ad valorem tax purposes based on a percentage of its “fair and reasonable market value”). Our supreme court has long treated that term as synonymous with “fair market value.” See Bynum Bros. v. State, 216 Ala. 102, 104-05, 112 So. 348, 350 (1927). “Fair market value” is “that price which one is willing to sell to one who is willing to buy with both having reasonable knowledge of the facts.” State v. Great Valley Land & Inv. Co., 53 Ala.App. 49, 51-52, 297 So.2d 375, 377 (Civ. 1974) (citing Wood v. United States, 89 Ct.Cl. 442, 29 F.Supp. 853 (1939)); see also Mt. Carmel Estates, Inc. v. Regions Bank, 853 So.2d 160, 166 (Ala.2002) (quoting Barnard v. First Nat’l Bank of Okaloosa County, 482 So.2d 534, 536 (Fla.Dist.Ct. App.1986), quoting in turn Flagship Bank of Orlando v. Bryan, 384 So.2d 1323 (Fla.Dist.Ct.App.1980)); and Ex parte Barron Servs., Inc., 874 So.2d 545, 550 n. 6 (Ala. 2003) (quoting Black’s Law Dictionary 597 (6th ed.1990)) (defining “fair market value” as “ ‘[t]he amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts’ ”).[6]
Although § 40-7-25 appears to give county tax assessors discretion on how to determine fair market value, at least two other later-enacted statutes clarify that county tax assessors must follow the valuation methodologies established by the Department. See Ala.Code 1975, §§ 40-7-61 (“The Department of Revenue shall prescribe procedures and shall set standards for the work to be done under this [reappraisal] program.”), and 40-7-64 (“The Department of Revenue shall prescribe for the counties the procedures to be followed, standards to be met, forms to be used, records to be kept and progress reports to be filed.”); see also Ex parte Lawley, 636 So.2d 474 (Ala.Civ.App.1994) (noting that Ala.Code 1975, § 40-2-11(1), gives the Department general and complete supervision of fair market valuation for taxation purposes). The Department certainly would have some discretion in adopting valuation methods, but its discretion is statutorily limited to using only such methods that derive fair market value. If the Department adopts a methodology from *501 which fair market value may not be derived, the Department would run afoul of §§ 40-7-25 and 40-7-62 and its methodology would be unlawful.
Pursuant to its statutory authority to regulate the valuation methodologies for ad valorem tax purposes, the Department promulgated Ala. Admin. Code, Rule 810-4-1-.04, which provides, in pertinent part, that “[t]he market value of all tangible personal property will be determined by using the procedures set forth in the [the. manual], as it may be amended from time to time.” Rule 810-4-l-.01(l)(a). The manual provides that appraisers generally should use the composite-factor method to determine fair market value, but the manual also states: “The manual is a guide in the appraisal of personal property and is not all inclusive. Any other guides or sources of information that provide fair market values of personal property may be used in addition to the manual.” Notably, the manual does not state that the taxpayer must present unusual or extraordinary reasons to justify departure from the composite-factor method.
In this case, the taxpayer appealed from two final assessments. In an appeal from a final assessment of personal-property ad valorem taxes, the appeal “shall be tried as other cases appealed to the circuit court from the board of equalization.” Ala.Code 1975, § 40-7-28(d). In appeals from rulings of the board of equalization,
“[i]f from all the evidence the court is of the opinion that the valuation is either too high or too low, it shall render a judgment fixing such valuation as it may deem fit.... It shall decide all questions as to the legality of the assessment and the valuation of the property....”
Ala. Code 1975, § 40-3-25. Construing similar language in an income-tax ease, our supreme court determined that § 40-3-25 contemplated a de novo proceeding before the trial court. See State v. Louis Pizitz Dry Goods Co., 243 Ala. 629, 11 So.2d 342 (1943); see also State v. Pollock, 251 Ala. 603, 38 So.2d 870 (1948). Thus, it is the duty of a trial court, in hearing an appeal from a final assessment like the ones in this case, to decide for itself, based on all the evidence before it, the value of the personal property. See Monroe Bond & Mortgage Co. v. State ex rel. Hybart, 254 Ala. 278, 48 So.2d 431 (1950) (construing predecessor to § 40-7-25 as authorizing county tax assessors to consider any and all information concerning value of property). In making that decision, the trial court should consider the assessment to be prima facie correct. See Ala.Code 1975, § 40-3-25. The burden rests on the taxpayer to produce competent evidence to show that the assessment is incorrect. See Lake Forest Prop. Owners Ass’n, Inc. v. Baldwin County Bd. of Equalization, 659 So.2d 605 (Ala.Civ.App.1994). It appears that whether a taxpayer has proven that the method used by a tax assessor has yielded an incorrect valuation of its property and, thus, an incorrect assessment is a question of fact to be decided by the trial court. See id.
In this case, the trial court decided that the method adopted by the Department and used by the tax assessor is “workable and practical.” However, that was not the issue before it. The pertinent inquiry was whether the composite-factor method yields a correct fair market value. No matter how convenient it may be to apply the composite-factor method, if the fair market value of the personal property cannot be derived from that method, as a matter of law, it may not be used. The trial court also decided that the taxpayer had not met its burden of proving an extraordinary reason for deviating from the composite-factor method. Again, the burden is not on the taxpayer to prove any *502 thing other than that the value assigned by the tax assessor incorrectly states the fair market value of the taxpayer’s personal property. Regardless of Martin’s and Hollis’s testimony, the taxpayer has no burden under the law, or even under the manual, to prove some extraordinary situation exists to compel deviation from the composite-factor method.
In its final judgment, the trial court did not make any finding regarding the main issue litigated by the parties — whether the composite-factor method used by the tax assessor produced the correct fair market value of the personal property of the taxpayer. Nowhere in its final judgment does the trial court state that the composite-factor method satisfactorily approximates fair market value. Additionally, viewing the entirety of the judgment in context, I cannot agree with the majority that the trial court made any such implied finding. The trial court did not determine the fair market value of the personal property at issue using any method, much less the composite-factor method. The trial court did not find that the auditor in this case had accurately computed fair market value. By placing the burden on the taxpayer, the trial court also did not find that the taxpayer had failed to prove that the tax assessor’s valuation was incorrect.
In its appeal, the taxpayer argues that the trial court erred in affirming the assessments based solely on its finding that the composite-factor method is a convenient way of appraising personal property. I agree. I would reverse the judgment of the trial court and remand the cause for the trial court to make findings regarding the correctness of the tax assessor’s valuation of the taxpayer’s personal property. I would instruct the trial court, in rendering its new judgment, to decide whether the composite-factor method used by the assessor accurately estimates the fair market value of the taxpayer’s personal property. If not, the trial court should determine the fair market value of the taxpayer’s personal property based on all the evidence before it, without regard to the composite-factor method, and adjust the tax liability of the taxpayer accordingly.
THOMAS, J., concurs.

. The taxpayer also filed a business-personal-property tax return for 2002, but it was not assessed any additional taxes for that year; thus, I limit my discussion only to the years 2003 through 2007.

. Although Ala.Code 1975, § 40-7-14, requires a taxpayer to state its "estimated value of every item of personal property listed” on the return, the form used by the tax assessor, for some unstated reason, does not contain a line or space for inputting that information.

.The taxpayer actually appealed the final assessment as to the tax years 2003 through 2006. That appeal remained pending when the tax assessor made a final assessment for the tax year 2007. The taxpayer then amended its appeal to include the 2007 final assessment.

. See note 1 in the main opinion.

. The manual uses a similar definition for "market value."